# AMERICAN MANUFACTURERS MUTUAL INSUR-ANCE CO. ET AL. *v.* SULLIVAN ET AL.

No. 97–2000.   Argued January 19, 1999—Decided March 3, 1999

REHNQUIST, C. J., delivered the opinion of the Court, Parts I and II of which were joined by O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., and Part III of which was joined by O'CONNOR, KENNEDY, THOMAS, and GINSBURG, JJ. GINSBURG, J., filed an opinion concurring in part and concurring in the judgment, *post,* p. 61. BREYER, J., filed an opinion concurring in part and concurring in the judgment, in which SOUTER, J., joined, *post,* p. 62. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post,* p. 63.

*Michael W. McConnell* argued the cause for petitioners. With him on the briefs were *Alan E. Untereiner, Robert McL. Boote, Burt M. Rublin,* and *Robert E. Kelly, Jr.*

*Malcolm L. Stewart* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Waxman, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, Jeffrey A. Lamken, Barbara C. Biddle,* and *Jacob M. Lewis.*

*Loralyn McKinley* argued the cause for respondents. With her on the brief for respondents Sullivan et al. were *Alan B. Epstein* and *Thomas J. O'Brien. Jan M. Ritchie, Patricia Farrell Kerelo, Joseph W. Cunningham,* and *Mark Pfeiffer* filed a brief for respondent School District of Philadelphia.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.†

Pennsylvania provides in its workers' compensation regime that an employer or insurer may withhold payment for disputed medical treatment pending an independent review to determine whether the treatment is reasonable and necessary. We hold that the insurers are not "state actors" under the Fourteenth Amendment, and that the Pennsylvania re-

---

*Briefs of *amici curiae* urging reversal were filed for the American Insurance Association et al. by *Mark F. Horning;* for the National Association of Waterfront Employers et al. by *F. Edwin Froelich* and *Charles T. Carroll;* and for the Washington Legal Foundation by *Ronald D. Maines, Daniel J. Popeo,* and *Paul D. Kamenar.*

Briefs of *amici curiae* urging affirmance were filed for the American Association of Retired Persons et al. by *Gil Deford, Sarah Lenz Lock, Michael Schuster, Jeanne Finberg, Vicki Gottlich,* and *Judith L. Lichtman;* for the Pennsylvania Federation of Injured Workers by *Roderick M. Hills, Jr.,* and *Richard W. McHugh;* for the Pennsylvania Trial Lawyers Association et al. by *Michael J. Foley, Mark S. Mandell, Jeffrey White,* and *Richard A. Kimnach;* and for Carl Kreschollek by *David M. Linker.*

†JUSTICE SCALIA joins Parts I and II of this opinion.

gime does not deprive disabled employees of property within the meaning of that Amendment.

## I

Before the enactment of workers' compensation laws, employees who suffered a work-related injury or occupational disease could recover compensation from their employers only by resort to traditional tort remedies available at common law. In the early 20th century, States began to replace the common-law system, which often saddled employees with the difficulty and expense of establishing negligence or proving damages, with a compulsory insurance system requiring employers to compensate employees for work-related injuries without regard to fault. See generally 1 A. Larson & L. Larson, Larson's Workers' Compensation Law §§ 5.20–5.30, pp. 2–15 to 2–25 (1996).

Following this model, Pennsylvania's Workers' Compensation Act, Pa. Stat. Ann., Tit. 77, § 1 *et seq.* (Purdon 1992 and Supp. 1998) (Act or 77 Pa. Stat. Ann.), first enacted in 1915, creates a system of no-fault liability for work-related injuries and makes employers' liability under this system "exclusive . . . of any and all other liability." § 481(a). All employers subject to the Act must (1) obtain workers' compensation insurance from a private insurer, (2) obtain such insurance through the State Workmen's Insurance Fund (SWIF), or (3) seek permission from the State to self-insure. § 501(a). Once an employer becomes liable for an employee's work-related injury—because liability either is not contested or is no longer at issue—the employer or its insurer[1] must pay for all "reasonable" and "necessary" medical treatment, and must do so within 30 days of receiving a bill. §§ 531(1)(i), (5).

---

[1] Self-insured employers and private insurers face identical obligations under Pennsylvania's workers' compensation system, and we therefore refer to them collectively as "insurers" or "private insurers."

To assure that insurers pay only for medical care that meets these criteria, and in an attempt to control costs, Pennsylvania amended its workers' compensation system in 1993. 1993 Pa. Laws, No. 44, p. 190. Most important for our purposes, the 1993 amendments created a "utilization review" procedure under which the reasonableness and necessity of an employee's past, ongoing, or prospective medical treatment could be reviewed before a medical bill must be paid. 77 Pa. Stat. Ann. § 531(6) (Purdon Supp. 1998).[2] Under this system, if an insurer "disputes the reasonableness or necessity of the treatment provided," § 531(5), it may request utilization review (within the same 30-day period) by filing a one-page form with the Workers' Compensation Bureau of the Pennsylvania Department of Labor and Industry (Bureau). § 531(6)(i); 34 Pa. Code §§ 127.404(b), 127.452(a) (1998). The form identifies (among other things) the employee, the medical provider, the date of the employee's injury, and the medical treatment to be reviewed. *Ibid.;* App. 5. The Bureau makes no attempt, as the Court of Appeals stated, to "address the legitimacy or lack thereof of the request," but merely determines whether the form is "properly completed—i.e., that all information required by the form is provided." *Sullivan* v. *Barnett,* 139 F. 3d 158, 163 (CA3 1998); see 34 Pa. Code § 127.452(a). Upon the proper filing

---

[2] Before Pennsylvania enacted the "utilization review" procedure, an insurer had no effective means of recouping payments for medical treatment that was later determined to be unreasonable or unnecessary. State law bars insurers from seeking reimbursement of excessive payments from health care providers, see *Moats* v. *Workmen's Compensation Appeal Bd.* (Emerald Mines Corp.), 588 A. 2d 116, 118 (Pa. Commw. 1991), and, although insurers are entitled to reimbursement from the Workmen's Compensation Supersedeas Fund for treatment later deemed to be unreasonable or unnecessary, 34 Pa. Code § 127.208(g) (1998), the fund is financed entirely from assessments levied on insurers and self-insured employers themselves. 77 Pa. Stat. Ann. § 999(b) (Purdon 1992). See generally D. Ballantyne, Workers Compensation Research Institute, Revisiting Workers' Compensation in Pennsylvania 36–37 (1997).

of a request, an insurer may withhold payment to health care providers for the particular services being challenged. 77 Pa. Stat. Ann. § 531(5) (Purdon Supp. 1998); 34 Pa. Code § 208(f).

The Bureau then notifies the parties that utilization review has been requested and forwards the request to a randomly selected "utilization review organization" (URO). § 127.453. URO's are private organizations consisting of health care providers who are "licensed in the same profession and hav[e] the same or similar specialty as that of the provider of the treatment under review," 77 Pa. Stat. Ann. § 531(6)(i) (Purdon Supp. 1998); 34 Pa. Code § 127.466. The purpose of utilization review, and the sole authority conferred upon a URO, is to determine "whether the treatment under review is reasonable or necessary for the medical condition of the employee" in light of "generally accepted treatment protocols." §§ 127.470(a), 127.467. Reviewers must examine the treating provider's medical records, §§ 127.459, 127.460, and must give the provider an opportunity to discuss the treatment under review, § 127.469.[3] Any doubt as to the reasonableness and necessity of a given procedure must be resolved in favor of the employee. § 127.471(b).

---

[3] Although URO's may not request, and the parties may not submit, any "reports of independent medical examinations," 34 Pa. Code § 127.461, employees are allowed to submit a "written personal statement" to the URO regarding their view of the "reasonableness and/or necessity" of the disputed treatment, App. 50. This latter aspect of the process differs from the system in place at the time of the Court of Appeals' decision. Under the law at that time, employees received notice that utilization review had been requested, but were not informed that their medical benefits could be suspended and were not permitted to submit materials to the URO. The Bureau modified its procedures in response to the Court of Appeals' decision, and now provides for more extensive notice and an opportunity for employees to provide at least some input into the URO's decision. Petitioners have not challenged the Court of Appeals' holding with respect to these additional procedures.

URO's are instructed to complete their review and render a determination within 30 days of a completed request. 77 Pa. Stat. Ann. § 531(6)(ii) (Purdon Supp. 1998); 34 Pa. Code § 127.465. If the URO finds in favor of the insurer, the employee may appeal the determination to a workers' compensation judge for a *de novo* review, but the insurer need not pay for the disputed services unless the URO's determination is overturned by the judge, or later by the courts. 77 Pa. Stat. Ann. § 531(6)(iv) (Purdon Supp. 1998); 34 Pa. Code § 127.556. If the URO finds in favor of the employee, the insurer must pay the disputed bill immediately, with 10 percent annual interest, as well as the cost of the utilization review.[4] 34 Pa. Code § 127.208(e); 77 Pa. Stat. Ann. § 531(6)(iii) (Purdon Supp. 1998).

Respondents are 10 individual employees and 2 organizations representing employees who received medical benefits under the Act.[5] They claimed to have had payment of particular benefits withheld pursuant to the utilization review procedure set forth in the Act. They sued under Rev. Stat. § 1979, 42 U. S. C. § 1983, acting individually and on behalf of a class of similarly situated employees.[6] Named as defendants were various Pennsylvania officials who administer the Act, the director of the SWIF, the School District of Philadel-

---

[4] If the URO's determination is overturned on appeal, the insurer may recover excess payments from the Workmen's Compensation Supersedeas Fund. See n. 2, *supra.*

[5] In addition to the 10 named employees, the 2 named organizations are the Philadelphia Area Project on Occupational Safety and Health, a nonprofit group composed of over 2,000 unions and their members, Amended Complaint ¶ 15, App. 12, and the Philadelphia Federation of Teachers, a labor organization representing approximately 20,000 employees of the School District of Philadelphia, *id.,* ¶ 16, App. 12.

[6] The class was defined to include "all persons who have been, or will be in the future, receiving medical benefits pursuant to the Pennsylvania Workers' Compensation [Act], and who have had or will have their medical benefits" suspended without prior notice and an opportunity to be heard. *Id.,* ¶ 17, App. 12–13.

phia (which self-insures), and a number of private insurance companies who provide workers' compensation coverage in Pennsylvania. Respondents alleged that in withholding workers' compensation benefits without predeprivation notice and an opportunity to be heard, the state and private defendants, acting "under color of state law," deprived them of property in violation of due process. Amended Complaint ¶¶ 265–271, App. 43–44. They sought declaratory and injunctive relief, as well as damages.

The District Court dismissed the private insurers from the lawsuit on the ground that they are not "state actors," *Sullivan* v. *Barnett*, 913 F. Supp. 895, 905 (ED Pa. 1996), and later dismissed the state officials who remained as defendants, as well as the school district, on the ground that the Act does not violate due process, App. to Pet. for Cert. 71a.

The Court of Appeals for the Third Circuit disagreed on both issues. 139 F. 3d 158 (1998). It held that a private insurer's decision to suspend payment under the Act—what the court called a "supersedeas"—constitutes state action. The court reasoned:

> "In creating and executing this system of entitlements, the [State] has enacted a complex and interwoven regulatory web enlisting the Bureau, the employers, and the insurance companies. The [State] extensively regulates and controls the Workers' Compensation system. Although the insurance companies are private entities, when they act under the construct of the Workers' Compensation system, they are providing public benefits which honor [s]tate entitlements. In effect, they become an arm of the State, fulfilling a uniquely governmental obligation under an entirely state-created, self-contained public benefit system. . . .
>
> "The right to invoke the supersedeas, or to stop payments, is a power that traditionally was held in the hands of the State. When insurance companies invoke the supersedeas (i. e., suspension) of an employee's medi-

cal benefits, they compromise an employee's [s]tate-created entitlements. The insurers have no power to deprive or terminate such benefits without the permission and participation of the [State]. More importantly, however, the [State] is intimately involved in any decision by an insurer to terminate an employee's constitutionally protected benefits because an insurer cannot suspend medical payments without first obtaining authorization from the Bureau. However this authorization may be characterized, any deprivation that occurs is predicated upon the State's involvement." *Id.*, at 168.

On the due process issue, the Court of Appeals did not address whether respondents have a protected property interest in workers' compensation medical benefits, stating that "[n]either party disputes" this point. *Id.*, at 171, n. 23. Thus focusing on what process is "due," the court held that payment of bills may not be withheld until employees have had an opportunity to submit their view in writing as to the reasonableness and necessity of the disputed treatment to the URO. The court then determined that the relevant statutory language permitting the suspension of payment during utilization review was severable and struck it from the statute. *Id.*, at 173–174.

We granted certiorari, 524 U. S. 981 (1998), to resolve a conflict on the status of private insurers providing workers' compensation coverage under state laws,[7] and to review the Court of Appeals' holding that due process prohibits insurers from withholding payment for disputed medical treatment pending review.

## II

To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed

---

[7] Cf. *Barnes* v. *Lehman*, 861 F. 2d 1383 (CA5 1988).

under color of state law. Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful,'" *Blum* v. *Yaretsky*, 457 U. S. 991, 1002 (1982) (quoting *Shelley* v. *Kraemer*, 334 U. S. 1, 13 (1948)).[8]

Perhaps hoping to avoid the traditional application of our state-action cases, respondents attempt to characterize their claim as a "facial" or "direct" challenge to the utilization review procedures contained in the Act, in which case, the argument goes, we need not concern ourselves with the "identity of the defendant" or the "act or decision by a private actor or entity who is relying on the challenged law." Brief for Respondents 16. This argument, however, ignores our repeated insistence that state action requires *both* an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," *and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922, 937 (1982); see *Flagg Bros., Inc.* v. *Brooks*, 436 U. S. 149, 156 (1978). In this case, while it may fairly be said that private insurers act "'with the knowledge of and pursuant to'" the state statute, *ibid.* (quoting *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 162, n. 23 (1970)), thus satisfying the first requirement, respondents still must satisfy the second, whether the allegedly unconstitutional conduct is fairly attributable to the State.[9]

---

[8] Where, as here, deprivations of rights under the Fourteenth Amendment are alleged, these two requirements converge. See *Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922, 935, n. 18 (1982).

[9] Respondents' reliance on *Tulsa Professional Collection Services, Inc.* v. *Pope*, 485 U. S. 478 (1988), as support for their position is misplaced. Nowhere in *Tulsa* did we characterize petitioner's claim as a "facial" or "direct" challenge to the Oklahoma "nonclaim" statute at issue there. Instead, we analyzed petitioner's challenge under our traditional two-step approach, requiring both action taken pursuant to state law and significant

Our approach to this latter question begins by identifying "the specific conduct of which the plaintiff complains." *Blum* v. *Yaretsky*, 457 U. S., at 1004; see *id.*, at 1003 ("Faithful adherence to the 'state action' requirement . . . requires careful attention to the gravamen of the plaintiff's complaint"). Here, respondents named as defendants both public officials and a class of private insurers and self-insured employers. Also named is the director of the SWIF and the School District of Philadelphia, a municipal corporation. The complaint alleged that the state and private defendants, acting under color of state law and pursuant to the Act, deprived them of property in violation of due process by withholding payment for medical treatment without prior notice and an opportunity to be heard. All agree that the *public officials* responsible for administering the workers' compensation system and the director of SWIF are state actors. See 139 F. 3d, at 167.[10] Thus, the issue we address, in accordance with our cases, is whether a *private insurer's* decision to withhold payment for disputed medical treatment may be fairly attributable to the State so as to subject insurers to the constraints of the Fourteenth Amendment. Our answer to that question is "no."

---

state involvement. See *id.*, at 486–487. While it may be true, as respondents argue, that the utilization review procedure here, like the nonclaim statute in *Tulsa*, is not "self-executing," that fact does not relieve respondents of establishing both requisites of state action. *Tulsa* does not suggest otherwise.

[10] At the same time the District Court dismissed the private insurers, it refused to grant the school district's motion to dismiss for lack of state action (the school district argued that because it contracted out its responsibilities as a self-insurer to a private company, it was not a state actor), leaving the question of the school district's status unresolved pending further discovery. *Sullivan* v. *Barnett*, 913 F. Supp. 895, 905 (ED Pa. 1996). The District Court's later ruling on the due process question obviated any need to decide whether the school district acted under color of state law, nor did the Court of Appeals rule on that question. See 139 F. 3d, at 167, and n. 16.

In cases involving extensive state regulation of private activity, we have consistently held that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson* v. *Metropolitan Edison Co.*, 419 U. S. 345, 350 (1974); see *Blum,* 457 U. S., at 1004. Faithful application of the state-action requirement in these cases ensures that the prerogative of regulating private business remains with the States and the representative branches, not the courts. Thus, the private insurers in this case will not be held to constitutional standards unless "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Ibid.* (internal quotation marks omitted). Whether such a "close nexus" exists, our cases state, depends on whether the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Ibid.;* see *Flagg Bros., supra,* at 166; *Jackson, supra,* at 357; *Moose Lodge No. 107* v. *Irvis,* 407 U. S. 163, 173 (1972); *Adickes* v. *S. H. Kress & Co., supra,* at 170. Action taken by private entities with the mere approval or acquiescence of the State is not state action. *Blum, supra,* at 1004–1005; *Flagg Bros., supra,* at 154–165; *Jackson, supra,* at 357.

Here, respondents do not assert that the decision to invoke utilization review should be attributed to the State because the State compels or is directly involved in that decision. Obviously the State is not so involved. It authorizes, but does not require, insurers to withhold payments for disputed medical treatment. The decision to withhold payment, like the decision to transfer Medicaid patients to a lower level of care in *Blum,* is made by concededly private parties, and "turns on . . . judgments made by private parties" without "standards . . . established by the State." *Blum, supra,* at 1008.

Respondents do assert, however, that the decision to withhold payment to providers may be fairly attributable to the State because the State has "authorized" and "encouraged" it. Respondents' primary argument in this regard is that, in amending the Act to provide for utilization review and to grant insurers an option they previously did not have, the State purposely "encouraged" insurers to withhold payments for disputed medical treatment. This argument reads too much into the State's reform, and in any event cannot be squared with our cases.

We do not doubt that the State's decision to provide insurers the option of deferring payment for unnecessary and unreasonable treatment pending review can in some sense be seen as encouraging them to do just that. But, as petitioners note, this kind of subtle encouragement is no more significant than that which inheres in the State's creation or modification of any legal remedy. We have never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it. See *Tulsa Professional Collection Services, Inc.* v. *Pope*, 485 U. S. 478, 485 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action"); see also *Lugar*, 457 U. S., at 937; *Flagg Bros.*, 436 U. S., at 165–166. It bears repeating that a finding of state action on this basis would be contrary to the "essential dichotomy," *Jackson, supra,* at 349, between public and private acts that our cases have consistently recognized.

The State's decision to allow insurers to withhold payments pending review can just as easily be seen as state inaction, or more accurately, a legislative decision not to intervene in a dispute between an insurer and an employee over whether a particular treatment is reasonable and necessary. See *Flagg Bros.*, 436 U. S., at 164–165. Before the 1993 amendments, Pennsylvania restricted the ability of an

insurer (after liability had been established, of course) to defer workers' compensation medical benefits, including payment for unreasonable and unnecessary treatment, beyond 30 days of receipt of the bill. The 1993 amendments, in effect, restored to insurers the narrow option, historically exercised by employers and insurers before the adoption of Pennsylvania's workers' compensation law, to defer payment of a bill until it is substantiated. The most that can be said of the statutory scheme, therefore, is that whereas it previously prohibited insurers from withholding payment for disputed medical services, it no longer does so. Such permission of a private choice cannot support a finding of state action. As we have said before, our cases will not tolerate "the imposition of Fourteenth Amendment restraints on private action by the simple device of characterizing the State's inaction as 'authorization' or 'encouragement.'" *Ibid.*

Nor does the State's role in creating, supervising, and setting standards for the URO process differ in any meaningful sense from the creation and administration of any forum for resolving disputes. While the decision of a URO, like that of any judicial official, may properly be considered state action, a private party's mere use of the State's dispute resolution machinery, without the "overt, significant assistance of state officials," *Tulsa, supra,* at 486, cannot.

The State, in the course of administering a many-faceted remedial system, has shifted one facet from favoring the employees to favoring the employer. This sort of decision occurs regularly in legislative review of such systems. But it cannot be said that such a change "encourages" or "authorizes" the insurer's actions as those terms are used in our state-action jurisprudence.

We also reject the notion, relied upon by the Court of Appeals, that the challenged decisions are state action because insurers must first obtain "authorization" or "permission" from the Bureau before withholding payment. See 139 F. 3d, at 168. As described in our earlier summary of the

statute and regulations, the Bureau's participation is limited to requiring insurers to file "a form prescribed by the Bureau," 34 Pa. Code § 127.452, processing the request for technical compliance, and then forwarding the matter to a URO and informing the parties that utilization review has been requested. In *Blum*, we rejected the notion that the State, "by requiring completion of a form," 457 U. S., at 1007, is responsible for the private party's decision. The additional "paper shuffling" performed by the Bureau here in response to an insurers' request does not alter that conclusion.

Respondents next contend that state action is present because the State has delegated to insurers "powers traditionally exclusively reserved to the State." *Jackson*, 419 U. S., at 352. Their argument here is twofold. Relying on *West* v. *Atkins*, 487 U. S. 42 (1988), respondents first argue that workers' compensation benefits are state-mandated "public benefits," and that the State has delegated the provision of these "public benefits" to private insurers. They also contend that the State has delegated to insurers the traditionally exclusive government function of determining whether and under what circumstances an injured worker's medical benefits may be suspended. The Court of Appeals apparently agreed on both points, stating that insurers "providing public benefits which honor State entitlements . . . become an arm of the State, fulfilling a uniquely governmental obligation," 139 F. 3d, at 168, and that "[t]he right to invoke the supersedeas, or to stop payments, is a power that traditionally was held in the hands of the State," *ibid.*

We think neither argument has merit. *West* is readily distinguishable: There the State was constitutionally obligated to provide medical treatment to injured inmates, and the delegation of that traditionally exclusive public function to a private physician gave rise to a finding of state action. See 487 U. S., at 54–56. Here, on the other hand, nothing in Pennsylvania's Constitution or statutory scheme obligates the State to provide either medical treatment or work-

ers' compensation benefits to injured workers. See *Blum,
supra,* at 1011. Instead, the State's workers' compensation
law imposes that obligation on employers. This case is
therefore not unlike *Jackson, supra,* where we noted that
"while the Pennsylvania statute imposes an obligation to fur-
nish service on regulated utilities, it imposes no such obliga-
tion on the State." *Id.,* at 353; see also *San Francisco
Arts & Athletics, Inc.* v. *United States Olympic Comm.,* 483
U. S. 522, 544 (1987) ("The fact '[t]hat a private entity per-
forms a function which serves the public does not make its
acts [governmental] action'") (quoting *Rendell-Baker* v.
*Kohn,* 457 U. S. 830, 842 (1982)).[11]

Nor is there any merit in respondents' argument that the
State has delegated to insurers the traditionally exclusive
governmental function of deciding whether to suspend pay-
ment for disputed medical treatment. Historical practice,
as well as the state statutory scheme, does not support re-
spondents' characterization. It is no doubt true that before
the 1993 amendments an insurer who sought to withhold
payment for disputed medical treatment was required to pe-
tition the Bureau, and could withhold payment only upon a
favorable ruling by a workers' compensation judge, and then
only for prospective treatment.

But before Pennsylvania ever adopted its workers' com-
pensation law, an insurer under contract with an employer
to pay for its workers' reasonable and necessary medical ex-
penses could withhold payment, for any reason or no reason,
without any authorization or involvement of the State. The

---

[11] The fact that the State has established a Workers' Compensation Se-
curity Fund to guarantee the payment of medical benefits in the event an
insurer becomes insolvent, see 77 Pa. Stat. Ann. § 1053 (Purdon 1992), does
not mean, as respondents suggest, that the State has created a self-
imposed obligation to provide benefits. The security fund is financed en-
tirely through assessments on insurers and receives no financial assistance
from the State. § 1055; see D. Ballantyne & C. Telles, Workers Compensa-
tion Research Institute, Workers' Compensation in Pennsylvania 15 (1991).

insurer, of course, might become liable to the employer (or its workers) if the refusal to pay breached the contract or constituted "bad faith," but the obligation to pay would only arise after the employer had initiated a claim and reduced it to a judgment. That Pennsylvania first recognized an insurer's traditionally private prerogative to withhold payment, then restricted it, and now (in one limited respect) has restored it, cannot constitute the delegation of a traditionally exclusive public function. Like New York in *Flagg Bros.*, Pennsylvania "has done nothing more than authorize (and indeed limit)—without participation by any public official— what [private insurers] would tend to do, even in the absence of such authorization," *i. e.*, withhold payment for disputed medical treatment pending a determination that the treatment is, in fact, reasonable and necessary. 436 U. S., at 162, n. 12.

The Court of Appeals, in response to the various arguments advanced by respondents, seems to have figuratively thrown up its hands and fallen back on language in our decision in *Burton* v. *Wilmington Parking Authority*, 365 U. S. 715 (1961). The Pennsylvania system, that court said, "inextricably entangles the insurance companies in a partnership with the Commonwealth such that they become an integral part of the state in administering the statutory scheme." 139 F. 3d, at 170. Relying on *Burton*, respondents urge us to affirm the Court of Appeals' holding under a "joint participation" theory of state action.

*Burton* was one of our early cases dealing with "state action" under the Fourteenth Amendment, and later cases have refined the vague "joint participation" test embodied in that case. *Blum* and *Jackson*, in particular, have established that "privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of *Burton*." *Blum*, 457 U. S., at 1011; see *Jackson, supra*, at 357–358. Here, workers' compensation insurers are at least

as extensively regulated as the private nursing facilities in *Blum* and the private utility in *Jackson.* Like those cases, though, the state statutory and regulatory scheme leaves the challenged decisions to the judgment of insurers.

Respondents also rely on *Lugar* v. *Edmondson Oil Co.,* 457 U. S. 922 (1982), which contains general language about "joint participation" as a test for state action. But, as the *Lugar* opinion itself makes clear, its language must not be torn from the context out of which it arose:

> "The Court of Appeals erred in holding that in this context 'joint participation' required something more than invoking the aid of state officials to take advantage of state-created attachment procedures. . . . Whatever may be true in other contexts, this is sufficient when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute." *Id.,* at 942.

In the present case, of course, there is no effort by petitioners to seize the property of respondents by an *ex parte* application to a state official.

We conclude that an insurer's decision to withhold payment and seek utilization review of the reasonableness and necessity of particular medical treatment is not fairly attributable to the State. Respondents have therefore failed to satisfy an essential element of their § 1983 claim.

### III

Though our resolution of the state-action issue would be sufficient by itself to reverse the judgment of the Court of Appeals, we believe the court fundamentally misapprehended the nature of respondents' property interest at stake in this case, with ramifications not only for the state officials who are concededly state actors, but also for the private insurers who (under our holding in Part II) are not. If the Court of Appeals' ruling is left undisturbed, SWIF, which

insures both public and private employers, will be required to pay for all medical treatment (reasonable and necessary or not) within 30 days, while private insurers will be able to defer payment for disputed treatment pending utilization review.[12] Although we denied the petitions for certiorari filed by the school district, 525 U. S. 824 (1998), and the various state officials, 525 U. S. 824 (1998), we granted both questions presented in the petition filed by the private insurance companies. The second question therein states:

> "Whether the Due Process Clause requires workers' compensation insurers to pay disputed medical bills prior to a determination that the medical treatment was reasonable and necessary." Pet. for Cert. (i).

This question has been briefed and argued, it is an important one, and it is squarely presented for review. We thus proceed to address it.

The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." See U. S. Const., Amdt. 14 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); *Mathews* v. *Eldridge,* 424 U. S. 319, 332 (1976). Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process. *Ibid.*

Here, respondents contend that Pennsylvania's workers' compensation law confers upon them a protected property interest in workers' compensation medical benefits. Under state law, respondents assert, once an employer's liability is established for a particular work-related injury, the em-

---

[12] SWIF, like all insurers and self-insured employers, is' entitled to reimbursement from the state supersedeas fund for treatment later determined to be unreasonable or unnecessary. See n. 2, *supra.* Because this fund is maintained through assessments on all insurers, the Court of Appeals' ruling, if left undisturbed, would likely cause distinct injury to private insurers.

ployer is obligated to pay for certain benefits, including partial wage replacement, compensation for permanent injury or disability, and medical care. See 77 Pa. Stat. Ann. §§ 431, 531 (Purdon Supp. 1998). It follows from this, the argument goes, that medical benefits are a state-created entitlement, and thus an insurer cannot withhold payment of medical benefits without affording an injured worker due process.

In *Goldberg* v. *Kelly*, 397 U. S. 254 (1970), we held that an individual receiving federal welfare assistance has a statutorily created property interest in the continued receipt of those benefits. Likewise, in *Mathews, supra,* we recognized that the same was true for an individual receiving Social Security disability benefits. In both cases, an individual's entitlement to benefits had been established, and the question presented was whether predeprivation notice and a hearing were required before the individual's interest in *continued* payment of benefits could be terminated. See *Goldberg, supra,* at 261–263; *Mathews, supra,* at 332.

Respondents' property interest in this case, however, is fundamentally different. Under Pennsylvania law, an employee is not entitled to payment for *all* medical treatment once the employer's initial liability is established, as respondents' argument assumes. Instead, the law expressly limits an employee's entitlement to "reasonable" and "necessary" medical treatment, and requires that disputes over the reasonableness and necessity of particular treatment must be resolved *before* an employer's obligation to pay—and an employee's entitlement to benefits—arise. See 77 Pa. Stat. Ann. § 531(1)(i) (Purdon Supp. 1998) ("The employer shall provide payment . . . for *reasonable* surgical and medical services" (emphasis added)); § 531(5) ("All payments to providers for treatment . . . shall be made within thirty (30) days of receipt of such bills and records *unless the employer or insurer disputes the reasonableness or necessity of the treatment*" (emphasis added)). Thus, for an employee's property interest in the payment of medical benefits to attach under state law, the employee must clear two

hurdles: First, he must prove that an employer is liable for a work-related injury, and second, he must establish that the particular medical treatment at issue is reasonable and necessary. Only then does the employee's interest parallel that of the beneficiary of welfare assistance in *Goldberg* and the recipient of disability benefits in *Mathews*.

Respondents obviously have not cleared both of these hurdles. While they indeed have established their initial *eligibility* for medical treatment, they have yet to make good on their claim that the particular medical treatment they received was reasonable and necessary. Consequently, they do not have a property interest—under the logic of their own argument—in having their providers paid for treatment that has yet to be found reasonable and necessary. To state the argument is to refute it, for what respondents ask in this case is that insurers be required to pay for patently unreasonable, unnecessary, and even fraudulent medical care without any right, under state law, to seek reimbursement from providers. Unsurprisingly, the Due Process Clause does not require such a result.

Having concluded that respondents' due process claim falters for lack of a property interest in the payment of benefits, we need go no further.[13]  The judgment of the Court of Appeals is

*Reversed.*

JUSTICE GINSBURG, concurring in part and concurring in the judgment.

I join Part III of the Court's opinion on the understanding that the Court rejects specifically, and only, respondents' de-

---

[13] Respondents do not contend that they have a property interest in their claims for payment, as distinct from the payments themselves, such that the State, the argument goes, could not finally reject their claims without affording them appropriate procedural protections. Cf. *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 430–431 (1982). We therefore need not address this issue. See *Lyng* v. *Payne*, 476 U. S. 926, 942 (1986) (reserving question); *Walters* v. *National Assn. of Radiation Survivors*, 473 U. S. 305, 320, n. 8 (1985) (same).

mands for constant payment of each medical bill, within 30 days of receipt, pending determination of the necessity or reasonableness of the medical treatment. See *ante*, at 61, n. 13. I do not doubt, however, that due process requires fair procedures for the adjudication of respondents' claims for workers' compensation benefits, including medical care. See *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 428–431 (1982); *Tulsa Professional Collection Services, Inc.* v. *Pope*, 485 U. S. 478, 485 (1988); Brief for United States as *Amicus Curiae* 21–22.*

Part III disposes of the instant controversy with respect to all insurers, the State Workmen's Insurance Fund as well as the private insurers. I therefore do not join the Court's extended endeavor, in Part II, to clean up and rein in our "state action" precedent. "It is a fundamental rule of judicial restraint . . . that this Court will not reach constitutional questions in advance of the necessity of deciding them." *Three Affiliated Tribes of Fort Berthold Reservation* v. *Wold Engineering, P. C.*, 467 U. S. 138, 157 (1984); see also *Ashwander* v. *TVA*, 297 U. S. 288, 347 (1936) (Brandeis, J., concurring). While this rule is ordinarily invoked to avoid deciding a constitutional question in lieu of a less tall ground for decision, its counsel of restraint is soundly applied to the instant situation: When a case presents two constitutional questions, one of which disposes of the entire case and the other of which does not, resolution of the case-dispositive question should suffice.

JUSTICE BREYER, with whom JUSTICE SOUTER joins, concurring in part and concurring in the judgment.

I join Parts I and II of the Court's opinion and its judgment. I agree with Part III insofar as it rejects respond-

---

*I agree with JUSTICE STEVENS that, although Pennsylvania's original procedure was deficient, the dispute resolution process now in place meets the constitutional requirement. See *post*, at 64 (opinion concurring in part and dissenting in part).

ents' facial attack on the statute and also points out that respondents "do not contend that they have a property interest in their claims for payment, as distinct from the payments themselves." *Ante*, at 61, n. 13. I would add, however, that there may be individual circumstances in which the receipt of earlier payments leads an injured person reasonably to expect their continuation, in which case that person may well possess a constitutionally protected "property" interest. See, *e. g.*, *Board of Regents of State Colleges* v. *Roth*, 408 U. S. 564, 577 (1972) ("It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined"); *Perry* v. *Sindermann*, 408 U. S. 593, 601 (1972); *Goldberg* v. *Kelly*, 397 U. S. 254, 262, and n. 8 (1970); *Mathews* v. *Eldridge*, 424 U. S. 319, 332 (1976).

JUSTICE STEVENS, concurring in part and dissenting in part.

Because the individual respondents suffered work-related injuries, they are entitled to have their employers, or the employers' insurers, pay for whatever "reasonable" and "necessary" treatment they may need. Pa. Stat. Ann., Tit. 77, §§ 531(1)(i), (5) (Purdon Supp. 1998). That right—whether described as a "claim" for payment or a "cause of action"— is unquestionably a species of property protected by the Due Process Clause of the Fourteenth Amendment. See, *e. g.*, *Tulsa Professional Collection Services, Inc.* v. *Pope*, 485 U. S. 478, 485 (1988). Disputes over the reasonableness or necessity of particular treatments are resolved by decisionmakers who are state actors and who must follow procedures established by Pennsylvania law. Because the resolution of such disputes determines the scope of the claimants' property interests, the Constitution requires that the procedure be fair. *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422

(1982).* That is true whether the claim is asserted against a private insurance carrier or against a public entity that self-insures. It is equally clear that the State's duty to establish and administer a fair procedure for resolving the dispute obtains whether the dispute is initiated by the filing of a claim or by an insurer's decision to withhold payment until the reasonableness issue is resolved.

In my judgment, the significant questions raised by this case are: (1) as in any case alleging that state statutory processes violate the Fourteenth Amendment, whether Pennsylvania's procedure was fair when the case was commenced, and (2), if not, whether it was fair after the State modified its rules in response to the Court of Appeals' decision. See *ante*, at 46, n. 3. In my opinion, the Court of Appeals correctly concluded that the original procedure was deficient because it did not give employees either notice that a request for utilization review would automatically suspend their benefits or an opportunity to provide relevant evidence and argument to the state actor vested with initial decisional authority. I would therefore affirm the judgment of the Court of Appeals insofar as it mandated the change described in the Court's n. 3, *ante*, at 46. I do not, however, find any constitutional defect in the procedures that are now in place, and therefore agree that the judgment should be reversed to the extent that it requires any additional modifications. It is not unfair, in and of itself, for a State to allow either a private or a publicly owned party to withhold payment of a state-created entitlement pending resolution of a dispute over its amount.

Thus, although I agree with much of what the Court has written, I do not join its opinion for two reasons. First, I think it incorrectly assumes that the question whether the

---

*As the Court correctly notes, "the State's role in creating, supervising, and setting standards for the URO process [do not] differ in any meaningful sense from the creation and administration of any forum for resolving disputes." *Ante*, at 54.

insurance company is a state actor is relevant to the controlling question whether the state procedures are fair. The relevant state actors, rather than the particular parties to the payment disputes, are the state-appointed decisionmakers who implement the exclusive procedure that the State has created to protect respondents' rights. These state actors are defendants in this suit. See *ante*, at 51. Second, the Court fails to answer either the question whether the State's procedures were fair when the case was filed or the question whether they are fair now.