WU, District Judge,
concurring:
I agree that the district court’s grant of summary judgment should be reversed and remanded but for different reasons than delineated in the majority’s opinion.
Initially, the majority characterizes the Child Welfare Act (“CWA”), 42 U.S.C. §§ 670-79b, as having a “mandate” that a participating State “cover the cost” of certain enumerated items for children’s foster care homes. See 42 U.S.C. § 675(4)(A). It then seems to suggest that it is adopting the “natural meaning” of the term “cover the cost” which is “to pay in full, not in part.” The majority also states that “because the CWA leaves ‘cover’ unqualified, the common understanding is that it must refer to meeting all the costs of food, clothing, shelter, etc. [emphasis added].”[1] Later, the majority indicates that it is acceptable under the CWA for a State to create a plan which allows for an estimate of the enumerated costs for various categories of foster care providers (such as the Rate Classification Level or “RCL” herein) and to pay such estimates where the plan also has a provision for annual adjustments (such as the California Necessities Index or “CNI” herein). I agree with the latter conclusion but cannot concur with the initial ones. More importantly, I differ with the majority in regards to the issues which need to be ruled upon in this appeal.
It is not necessary to decide what “cover the cost” means under the CWA or for this court to determine whether “substantial compliance” with the “CWA’s cost requirements suffices” in order to resolve this *1024 appeal. Further, discretion warrants that we not do so herein. Rather, because the State Plan requires annual CNI adjustments and California clearly has not fully complied with that requirement (or obtained relief from that obligation), reversal can and should be based on that ground alone.
“In order for a State to be eligible for payments under [the CWA],” it must have a plan approved by the Secretary of the Department of Health and Human Services which contains certain prerequisites, one of which is the provision for foster care maintenance payments. See 42 U.S.C. § 671(a). The State Plan enacted by California and approved by the Secretary requires that “[b]eginning with the 2000-01 fiscal year, the standardized schedule of rates [for the RCL] shall be adjusted annually by an amount equal to the CNI computed pursuant to [Cal. Welf. & Inst.Code] Section 11453, subject to the availability of funds.” Cal. Welf. & Inst. Code § 11462(g)(2). On the merits herein, everyone (including the State) seems to accept that: 1) the State Plan enacted by California pursuant to 42 U.S.C. § 671 passes muster; 2) the State Plan requires California to include annual adjustments to the RCL payments (although a lack of funds can affect the increases under section 11462(g)(2)); and 3) California is not in compliance with its Plan in regards to annual adjustments as structured by the State and approved by the Secretary. Nevertheless, at best, all that the Plaintiff has actually shown is that the State has failed to comply with its own statute (ie. Cal. Welf. & Inst.Code § 11462(g)(2)). The State has conceded (and the Plaintiff does not contend otherwise) that California is not using any un availability of funds contention to justify its failure to pay the adjusted amounts.
The action before the Court is for violation of the CWA. Without a provision in the CWA for a cost-of-living adjustment or its equivalent, it is difficult to see how the CWA itself is violated by the State’s conduct. The majority in fact makes the case for this observation when it states (with emphasis added here):
While the CWA identifies the types of items that must be covered, it does not prescribe any particular metric to measure the cost of those items. Each state develops its own plan. California uses the RCL system to make this determination .... The California statute moreover provides for yearly adjustments in the proper RCL calculation, tied to the CNI — in other words, it makes sure if the cost of certain items goes up or down, the RCL takes that rise or fall in cost into account.... Thus, California decided that the original RCL, as adjusted by the CNI each year, is the cost of the basket of items the CWA requires to be covered.... In other words, the CWA requires California to cover the cost of certain items and California has developed a formula to determine what those items cost, but is now only partially covering the cost of those items.
The opinion later reaffirms this point when it indicates that: “[i]n sum, the CWA does not set rates or tell states how they are supposed to cover costs. It does not require states to apply an index such as the CNI, or to adopt any particular system for arriving at the amount to be reimbursed.”
Normally, the difficult issue which would have to be resolved herein is whether the violation of the State’s obligations under a cooperative federal-state welfare program could give rise to a federal right enforceable by means of a 42 U.S.C. § 1983 law *1025 suit.[2] See generally Blessing v. Freestone, 520 U.S. 329, 340-48, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); Suter v. Artist M, 503 U.S. 347, 350-64, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). However, in this case, the State in a motion to dismiss specifically raised the issues of “whether the CWA confers a[sic] individual right of enforcement upon plaintiff for foster care maintenance payments” and whether the Plaintiff “has a private right of action under 42 U.S.C. § 1983 to enforce the provisions of the Child Welfare Act at issue.” California Alliance of Child and Family Services v. Allenby, 459 F.Supp.2d 919, 921-22 (N.D.Cal.2006). The district court answered “yes” to both of those questions in a published decision. Id. However, the State did not file a cross-appeal as to that decision. Moreover, as noted in footnote 5 of the majority’s opinion, the State raised no argument on appeal as to whether the CWA creates a private right of action in this context. Thus, the State has effectively (but, perhaps unfortunately, given the importance of those questions and that analysis) waived its right to litigate those issues and has conceded them for purposes of this appeal.
As noted in Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), “[i]n legislation enacted pursuant to [Congress’s] spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.” That is precisely the remedy incorporated into the CWA. Furthermore, the procedure set out in the statute requires the Secretary to initially consider the question of compliance and only thereafter provides for judicial review.
42 U.S.C. § 1320a-2a(a) and (c) state:
(a) In general
The Secretary, in consultation with the State agencies administering the State programs under parts B and E of sub-chapter IV of this chapter, shall promulgate regulations for the review of such programs to determine whether such programs are in substantial conformity with—
(1) State plan requirements under such parts B and E,
(2) implementing regulations promulgated by the Secretary, and
(3) the relevant approved State plans.
(c) Provisions for administrative and judicial review
The regulations referred to in subsection (a) of this section shall—
(1) require the Secretary, not later than 10 days after a final determination that a program of the State is not in conformity, to notify the State of—
(A) the basis for the determination; and
(B) the amount of the Federal matching funds (if any) to be withheld from the State;
(2) afford the State an opportunity to appeal the determination to the Departmental Appeals Board within 60 days after receipt of the notice described in *1026 paragraph (1) (or, if later, after failure to continue or to complete a corrective action plan); and
(3) afford the State an opportunity to obtain judicial review of an adverse decision of the Board, within 60 days after the State receives notice of the decision of the Board, by appeal to the district court of the United States for the judicial district in which the principal or headquarters office of the agency responsible for administering the program is located.
Pursuant to Section 1320a-2a(a) and (c), the Secretary has promulgated consistent regulations. See, e.g., 45 C.F.R. §§ 1355.32, 1355.39. A full or partial review can be initiated “at any time, based on any information, regardless of the source that indicates that the State may no longer be operating in substantial conformity.” 45 C.F.R. § 1355.32(c)(1).
Given the statutory scheme whereby the issue of substantial conformity of California’s foster care program with the CWA (42 U.S.C. Chapter 7, Subchapter IV, Part E) and the approved State Plan is to be first considered by the Secretary’s desig-nee and then by the Departmental Appeals Board before review by the district court, we should be somewhat reluctant to reach issues such as the meaning of the term “cover the costs” and whether (and to what extent) “substantial compliance” can satisfy the requirements of 42 U.S.C. § 675(4)(A) before the Secretary has been given the opportunity to initially rule on California’s conformity/compliance. The mere fact that the parties have chosen to litigate this case so as to preclude that appropriate review by the Secretary does not mean that this court should unnecessarily decide issues which are within the Secretary’s expertise.
In sum, it is apparently undisputed that California is not complying with the requirements of the State Plan approved by the Secretary because it has failed and is currently failing to provide the full annual adjustments in the form of CNI increases to the RCLs for group foster care maintenance providers as required by Cal. Welf. & Inst.Code § 11462(g)(2). Given that misfeasance/nonfeasance, it is unnecessary to resolve what “cover the cost” in 42 U.S.C. § 675(4)(A) means since, irrespective of any definition which we give it, in the end California is still non-eompliant with its own State Plan and California has not sought to raise on this appeal whether the Plaintiff can bring a private action under section 1983 to enforce the provisions of the CWA purportedly at issue herein. Similarly, given that the applicable statute (42 U.S.C. § 1320a-2a) and its concomitant regulations provide that the Secretary is to initially determine whether a State’s program is in “substantial conformity” with the requirements of the CWA, its regulations and the relevant approved State Plan, the issue of whether California’s practice (of providing only about 80% of the full annual adjusted payments to foster care providers) is in “substantial compliance” with the CWA should be addressed by the Secretary before this court interjects itself into the fray.
In light of the above, I agree that the district court’s grant of summary judgment in favor of the State should be reversed and remanded, but for different reasons and on a much more limited basis than pronounced in the majority’s opinion.

. Paying “in full” "all” of a foster care provider's costs for supplying food, clothing, shelter, etc. would be comparable to reimbursing the provider's actual expenditures for such items. However, that is not what the majority ultimately concludes is required by the State Plan or what it finds to be sufficient under the CWA.

. A "claim for violation of state law is not cognizable under § 1983.” Cornejo v. County of San Diego, 504 F.3d 853, 855 n. 3 (9th Cir.2007). "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.” American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).