NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2838

GRACE MARVEL, Individually and
as Executrix for the Estate of David Marvel,

Appellant

v.

COUNTY OF DELAWARE, WALTER R. OMLOR, JR.;
and PAUL M. MICUN,

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-07-cv-05054)
District Judge: Ronald L. Buckwalter

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2010

Before: AMBRO and CHAGARES, Circuit Judges, and JONES,* District Judge

(Opinion filed : October 14, 2010)

OPINION

_____

*The Honorable John E. Jones, III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

JONES, District Judge

Appellant Grace Marvel ("Mrs. Marvel"), acting as executrix of the Estate of her husband, David Marvel ("Mr. Marvel"), appeals an order of the United States District Court of the Eastern District of Pennsylvania granting summary judgment in favor of Appellees County of Delaware ("Delaware County"), Walter R. Omlor, Jr. ("Omlor") and Paul M. Micun ("Micun"), in this civil rights action arising out of Mr. Marvel's death on August 1, 2006 while he was performing court-ordered community service at the Delaware County Emergency Training Center. We will affirm the District Court's order.

I.

After being arrested on DUI-related charges in Ridley Creek State Park on May 10, 2006, 59-year old Mr. Marvel, in consultation with counsel, applied for and was accepted into Delaware County's fast-track accelerated rehabilitation disposition ("ARD") program.[1] Participation in the ARD program is totally voluntary, and all community service workers are advised in advance that they will engage in manual labor. Individuals in the program select their own dates of service, but must have their service completed within sixty days of their administrative hearing. If an individual were to advise that he or she had a medical concern, the office would require him to deliver medical documentation noting his restrictions, which could trigger another more suitable

_____

[1]ARD is a program for first-time offenders that, upon successful completion, allows the underlying criminal charges to be dismissed.

2

assignment.

In late July 2006, Mr. Marvel contacted Omlor, the director of the Delaware County Community Services Department, and selected July 31 and August 1, 2006 as the dates that he would perform the 16 hours of community service work he was required to complete. Mr. Marvel informed Omlor that he was employed as a crane operator. Omlor did not ask about nor did Mr. Marvel volunteer any information about his medical history. Omlor told Mr. Marvel to report at 7:30 a.m. on the first date, dressed for the weather, wearing work gloves and prepared to perform labor.

For multiple years prior to the time period in question, Mr. Marvel had been treated for high blood pressure by his family physician. During the summer of 2006 he was taking cardiac medication to both control his blood pressure and lower his cholesterol, and took a daily aspirin as well. According to Mrs. Marvel, however, he had never experienced any direct problems with his heart.

The weather on July 31 and August 1, 2006 was extremely hot. In fact, the National Weather Service issued an Excessive Heat Warning for Delaware County for those dates, as the heat index values reached 110. Upon reporting, Mr. Marvel spoke with Micun, the Community Service Supervisor. According to Micun, after all the workers were checked in, he asked if anyone had construction experience since there were union bricklayers on site that needed assistance. Four volunteers stepped forward, including Mr. Marvel, who indicated that he worked on a crane in Philadelphia. Mr.

Marvel stated to Micun that he volunteered to do construction because he had experience in that area, and preferred to stay on site rather than going out to pick up trash.

On July 31, 2006, Mr. Marvel spent his day passing cinder blocks from a palette on scaffolding that was twenty feet high to the union workers who were laying the blocks. He did so in a partially shaded area, and he and his co-workers were provided a five-gallon jug filled with ice water, which was sufficient to last through the day. They were also given several breaks throughout the day, as needed. Mr. Marvel completed the first day of the ARD service work without incident. At home that evening, he told his wife that his shoulders were very sore, that he was exhausted, and further complained about having to wear a scarf over his face due to all the dust. He did not, however, express any concern about returning to the same work the next day.

On August 1, 2006, Mr. Marvel reported for duty and again volunteered to do the same work he had done the previous day. Approximately three hours into the day, one of Mr. Marvel's fellow laborers noticed that he did not want water, was not looking well, and seemed flushed. Shortly thereafter, Mr. Marvel collapsed. Micun began performing CPR on Mr. Marvel and asked the other men to wipe Mr. Marvel's chest. One of the fellow laborers called his wife, a nurse, who advised them to put ice under Mr. Marvel's armpits and an ice water-soaked shirt around his neck. Micun called an individual in the office and asked him to call 911 and to notify the EMTs that CPR was in progress. The police and paramedics arrived after four to five cycles of CPR had been performed and

4

within approximately five to ten minutes after Mr. Marvel collapsed. The paramedics inserted an air tube down Mr. Marvel's throat and hooked him up to a heart monitor. Mr. Marvel had a heartbeat and was breathing when he was placed on the ambulance and taken to the hospital. Unfortunately, within fifteen minutes Micun and the others were informed that Mr. Marvel had been declared dead on arrival at the hospital.

Dr. Rosen, the emergency room physician, concluded that Mr. Marvel died from a heart attack that was not heat-related. Subsequently, the Delaware County Medical Examiner, Dr. Hellman, called Mrs. Marvel and indicated that he was comfortable with the treating physician's determination that the cause of Mr. Marvel's death was cardiac-related and that it occurred with exertion. An autopsy of Mr. Marvel revealed that his left anterior artery was ninety-five percent closed and his right anterior artery was ninety percent closed. The autopsy report indicated that Mr. Marvel's death occurred as a consequence of arteriosclerotic coronary artery disease, with history of hypertension, association with exertion. There was no finding of any heat-related causes.

II.

Mrs. Marvel, individually and as the executrix for the estate of her husband, initiated this action on November 30, 2007. Both Counts of the Complaint assert constitutional claims under 42 U.S.C. § 1983. Count I alleges that Omlor and Micum, acting under color of state authority, deprived Mr. Marvel of his constitutional rights under the Fourteenth Amendment, including his liberty interests in: (1) bodily safety

5

while performing community service; (2) freedom from deprivation of life without due process of law; and (3) an expectation of minimal standards for the safety, health, well-being and security of community service workers. Count II alleges that Delaware County violated Mr. Marvel's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments by failing to develop or implement policies or procedures regarding the medical screening of ARD applicants or community service workers; failing to abide by the excess heat warning; failing to give consideration to the extreme weather conditions or a worker's age; failing to provide adequate medical assistance to Mr. Marvel; and failing to properly train, supervise, and monitor Mr. Marvel during his community service.

The District Court denied the appellees' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on April 10, 2008. Thereafter, by Memorandum and Order dated June 3, 2009, the District Court granted the appellees' motion for summary judgment. Mrs. Marvel appeals this ruling.

III.

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and exercise plenary review over a district court's decision to grant summary judgment. Summary judgment is appropriate when "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56( c). If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, we

6

affirm the District Court's ruling.

IV.

Section 1983, the premise of both counts of Mrs. Marvel's Complaint, "is not a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). To state a cause of action under section 1983, a plaintiff must demonstrate both that (1) the defendants acted under color of state law; and (2) their actions deprived the plaintiff of rights secured by the Constitution or federal statutes. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The parties do not dispute that the appellees were acting under color of state law; thus the analysis turns on whether their actions deprived Mr. Marvel of his constitutional rights.

Count I of the Complaint is based on a state-created danger theory. To establish a state-created danger claim, the following essential elements must be met: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*

7

*v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)(citations omitted).

The first element of the state-created danger test requires that the harm ultimately caused was a foreseeable and fairly direct result of the state's actions. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). While the District Court concluded that a reasonable jury could find harm to Mr. Marvel foreseeable based on the combination of the excessive heat on August 1, 2006 and Mr. Marvel's age (59 years old), we are not so persuaded. Absent any indication that Mr. Marvel suffered from any pre-existing health condition, and indeed no such indication was obvious, we cannot find it foreseeable that Marvel might be harmed by performing labor in the conditions on August 1, 2006.[2]

The second element requires that the state actor acted with a degree of culpability that "shocks the conscience." *Bright*, 443 F.3d at 281. In making this determination, the district court must look to the facts of each individual case to determine whether the state actor's conduct is indeed conscience shocking. *See Sanford v. Stiles*, 456 F.3d 298, 309-10 (3d Cir. 2006). As aforestated, the day of Mr. Marvel's death was extremely hot; however, it cannot be concluded that the weather itself foreclosed labor in total. Further,

---

[2] Dreadful as the facts are, it is well to note that Mr. Marvel's participation in the program was entirely voluntary. His election to engage in heavy labor placed some responsibility upon Mr. Marvel to know his own limitations and disclose them to Micun. Moreover, it appears that not even Mr. Marvel knew that his pre-existing conditions were so grave that he was virtually a cardiac accident waiting to happen. Thus, even if Micun had asked Mr. Marvel about any limitations, it is highly unlikely that Mr. Marvel would have responded affirmatively.

and to reiterate, despite the weather and at least some limited knowledge of his own medications and condition, Mr. Marvel volunteered for construction work not only on the first day, but returned on the second day as well. As noted, the appellees never had any knowledge of Mr. Marvel's medications and medical treatment. They thus cannot be considered to have ignored a known risk to Mr. Marvel, nor could it be expected that they should have prevented Marvel from volunteering for construction labor that day. Based on the foregoing, we simply cannot find that the appellees' conduct shocked the conscience. Thus, Mrs. Marvel's claim fails on this element.

Mrs. Marvel is also unable to establish the third and final element of the state-created danger test. Under this element, a plaintiff must show that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281. A state actor's failure to act does not satisfy this element. *Id*. at 282. Further, a plaintiff must establish a direct causal relationship between the affirmative act and the plaintiff's harm. *Id*. at 281.

It is evident, based on our review of the record, that Mrs. Marvel has not identified any affirmative action on the part of the appellees that harmed him or exposed Mr. Marvel to danger. Not only did Mr. Marvel volunteer generally for the ARD program, but as noted he also volunteered specifically for his dates of service and the type of labor he undertook while completing his community service time. As noted, a failure

to act will not suffice to establish a section 1983 violation. But even if it did, Mrs. Marvel seeks to impose upon appellees what in effect would be a comprehensive medical screening protocol for anyone who elects to participate in community service related to the ARD program. Clearly this is an intensive and cost-prohibitive step that would defeat the purpose of offering this type of fast-track ARD opportunity to offenders.

V.

Count II of Mrs. Marvel's Complaint asserts that the Defendant County of Delaware violated constitutional rights in various way. However, all of these claims fail based on Delaware County's immunity pursuant to *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Under the dictates of *Monell*, a municipality cannot be held liable under § 1983 on a respondeat superior theory. *Id*. at 690-691. To hold municipalities liable under § 1983, a plaintiff must identify either a "policy, statement, ordinance regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Id*. Additionally, there must be a showing of causation. A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the County of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

There is little that we can add to the District Court's comprehensive opinion on

this point; therefore we shall only endeavor to summarize it herein. None of the grounds for Mrs. Marvel's claims against the County of Delaware is viable under *Monell*. First, several of her claims pertain to actions by the County of Delaware that occurred *after* Mr. Marvel's death, which obviously cannot be attributed to an alleged deprivation of Mr. Marvel's constitutional rights. Next, Mrs. Marvel has failed to establish that there were any 'customs' or 'policies' of the Delaware County ARD program that caused a deprivation of Mr. Marvel's federal rights, such as requiring workers to labor in direct sunlight or failing to give them water. Finally and significantly, Mrs. Marvel has failed to establish that a pattern of violations existed such to alert the County of a need to establish a policy to prevent a deprivation of rights.

## VI.

For all of the foregoing reasons, we find that the appellees were entitled to summary judgment on both claims asserted by Mrs. Marvel. Her husband's death was manifestly a tragic occurrence, but not one for which the appellees are liable. Accordingly, we will affirm the order of the District Court.