[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 325.]

THE STATE EX REL. HAYLETT *v.* OHIO BUREAU OF WORKERS' COMPENSATION ET AL.

[Cite as *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.*, 1999-Ohio-134.]

*Workers' compensation—Managed care organization program enacted in R.C. 4121.44 and 4121.441 does not violate Section 35, Article II of the Ohio Constitution.*

The managed care organization program enacted in R.C. 4121.44 and 4121.441 does not violate Section 35, Article II of the Ohio Constitution.

(No. 98-675–Submitted May 18, 1999—Decided December 29, 1999.)

IN MANDAMUS and PROHIBITION.

_____

{¶ 1} In 1993, the General Assembly enacted R.C. 4121.44 and 4121.441, which established a health plan system for Ohio's Bureau of Workers' Compensation ("BWC") called the Health Partnership Program ("HPP"). The HPP is a comprehensive managed care program administered by the BWC to provide medical, surgical, nursing, drug, hospital, and rehabilitation services and supplies to employees for injuries or occupational diseases that are compensable under R.C. Chapters 4123, 4127, or 4131.

{¶ 2} An integral part of the HPP is the use of managed care organizations ("MCOs"), private entities that contract with the BWC to provide medical management and cost containment services. Each MCO has a network of business partners that provides a full range of medical services and supplies, including specialized services. Ohio Adm.Code 4123-6-041.

{¶ 3} Relator-claimant, Duetta Haylett, was injured at work on September 20, 1994. She filed a workers' compensation claim that was allowed. Following

her injury, Haylett received chiropractic treatments from James Viers, D.C., which were paid by the BWC.

{¶ 4} Respondent Anthem Blue Cross and Blue Shield, Inc. ("Anthem") is a certified MCO that contracted with Haylett's employer to manage the medical aspect of Haylett's workers' compensation claim. In early 1998, Anthem conducted a utilization review of the chiropractic treatment that Haylett was receiving. In a utilization review, the MCO assesses the employee's medical care in terms of medical necessity, the appropriateness of the place, level, and duration of care, and the frequency or quality of the services being provided. Ohio Adm.Code 4123-6-01(U). On February 9, 1998, Anthem notified Haylett and Dr. Viers that "it appears that chiropractic services that [Haylett is] receiving are not medically necessary." The letter further informed Haylett and Dr. Viers that fees for further treatments would not be reimbursed. Anthem enclosed a dispute resolution form with the letter to enable Haylett to readily appeal the decision. Within three days, Anthem contacted Haylett's chiropractor with recommendations for other treatment that may have been appropriate for her allowed conditions.

{¶ 5} Haylett initiated Anthem's dispute resolution process on February 18, 1998. Within a week, Anthem arranged another chiropractic review. That chiropractor also concluded that Haylett's chiropractic care was not medically necessary for her allowed conditions.

{¶ 6} On March 3, 1998, Haylett filed for a second level of review in Anthem's dispute resolution process. Another review was conducted on March 4, 1998, by a different chiropractor, who also concluded that Haylett was not benefiting from her chiropractic treatments. On March 9, 1998, Anthem informed Haylett and Dr. Viers of the results of the second level of the dispute resolution process.

**{¶ 7}** On March 13, 1998, counsel for Haylett referred Haylett's claim to the BWC for an independent review. On March 31, 1998, the BWC issued an order that disallowed the requested chiropractic treatment. Haylett appealed to the Industrial Commission. Following a hearing on June 1, 1998, the district hearing officer granted Haylett's appeal and vacated the previous BWC order. The district hearing officer did not approve Haylett's request for unlimited treatments but did authorize two chiropractic treatments per month for three months.

**{¶ 8}** While her administrative appeal was pending before the Industrial Commission, Haylett filed for a writ of mandamus and a writ of prohibition. She seeks to compel respondents BWC and Industrial Commission to prevent MCOs from "terminating" medical treatment and benefits and from following the mandatory dispute resolution process for MCOs in Ohio Adm.Code 4123-6-16.

**{¶ 9}** This cause is now before this court as an original action in mandamus and prohibition.

_____

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* for relator, and urgins issuance of the writs for *amicus curiae*, Ohio AFL-CIO.

*Betty D. Montgomery,* Attorney General, and *Dennis L Hufstsader,* Assistant Attorney General, for respondent Ohio Bureau of Workers' Compensation; and *James A. Barnes*, Assistant Attorney General, for respondent.

*Vorys, Sater, Seymour & Pease, L.L.P., Michael J. Canter* and *Jacklyn J. Ford*, for respondent Anthem Blue Cross and Blue Shield.

*Gallon & Takacs Co., L.P.A.,* and *Theodore A. Bowman*, urging issuance of the writs for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Garvin & Hickey, L.L.C., Preston J. Garvin* and *Michael J. Hickey*, urging denial of the writs for *amici curiae*, Ohio Chamber of Commerce, Ohio Manufacturers Association, Ohio Chapter of the National Federation of Independent Business, and Ohio Farm Bureau.

*Bricker & Eckler L.L.P.*, *Charles D. Smith, Diane Richards Brey* and *James Burnes*; *Porter, Wright, Morris & Arthur* and *Theodore G. Fisher*, urging denial of the writs for *amici curiae*, MCO League of Ohio and Ohio Association of Managed Care Organizations.

_____

**PFEIFER, J.**

{¶ 10} At issue in this case is the constitutionality of the MCO program. Haylett argues that the MCO program violates Section 35, Article II of the Ohio Constitution because it is an improper delegation of authority to a private entity. We disagree. She also argues that MCOs violate due process when they terminate a claimant's medical treatment without providing prior notice and a prior hearing. We agree that the MCO program as currently administered can lead to deprivations of due process. However, based on the facts of this case, we determine that Haylett was not deprived of due process. Accordingly, we deny the writ.

{¶ 11} A statute is presumed to be constitutional and every reasonable presumption will be made in favor of its validity. *State ex rel. Michaels v. Morse* (1956), 165 Ohio St. 599, 603, 60 O.O. 531, 533, 138 N.E.2d 660, 664; *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 147, 57 O.O. 134, 137, 128 N.E.2d 59, 63. Accordingly, any doubt as to constitutionality is resolved in favor of the validity of the statute. *Id*.

*The HPP/MCO Program*

{¶ 12} The MCO program was created as part of an overall plan, enacted by the General Assembly in R.C. 4121.44 and 4121.441, to more efficiently manage the medical aspects of workers' compensation claims. A committee composed of individuals from business, labor, medical providers, and the BWC staff designed the major components of the HPP, including the MCO program. The committee included representatives from the AFL-CIO, the Ohio Civil Service Employees

Association, the Communications Workers of America, and the Ohio Trial Lawyers Association.

{¶ 13} On March 28, 1995, the committee reached unanimous agreement on key aspects of the BWC's HPP. Following public hearings, the BWC promulgated a series of administrative rules in Ohio Adm.Code Chapter 4123-6 to implement the HPP.

{¶ 14} Under the new program, the BWC administers the HPP and monitors the MCO program, including certifying each MCO and individual provider. The BWC also conducts regular recertification reviews. The BWC exclusively determines whether a claim is compensable and what conditions are allowed, subject only to an appeal to the Industrial Commission. Ohio Adm.Code 4123-6-043(A); 4123-6-045. The BWC authorizes the release of state funds to pay the medical claims. Ohio Adm.Code 4123-6-043(A); 4123-6-045(A). The BWC works with the MCO, the employer, the employee, and the provider to effect a course of treatment that promotes a safe and speedy return to work. Ohio Adm.Code 4123-6-043(B).

{¶ 15} The medical aspect of each claim is managed by an MCO. The MCO must promptly notify the BWC of an employee's industrial injury. While the BWC determines the compensability of a claim, the MCO works "in conjunction with the employer, employee, attending physician, and the [BWC to] seek a course of medical or rehabilitative treatment that promotes a safe return to work." Ohio Adm.Code 4123-6-043(B).

{¶ 16} During the life of a medical claim, the MCO performs utilization reviews, as in the case of Haylett. Utilization reviews ensure that only medical services and supplies that are medically necessary for the diagnosis and treatment of allowed conditions and that are causally related to those conditions will be considered for payment. The MCO must submit all medical bills to the BWC. Ohio

Adm.Code 4123-6-11. The BWC then authorizes payment and sends it to the MCO for reimbursement to the individual provider.

{¶ 17} The MCO program has a mandatory dispute resolution process that is available to employees, employers, and providers. Ohio Adm.Code 4123-6-16. The MCO is required to provide two levels of independent review that must be completed within twenty-one days. Ohio Adm.Code 4123-6-16(C). The MCO must notify the BWC if the dispute has not been resolved within that period of time. At that time, the BWC conducts its own independent review and issues an order. Ohio Adm.Code 4123-6-16(D). Either party may appeal this order to the Industrial Commission.

*Section 35, Article II, Ohio Constitution*

{¶ 18} Section 35, Article II of the Ohio Constitution provides that "laws may be passed establishing a state fund to be * * * administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * * Laws may be passed establishing a board which may be empowered to * * * collect, administer and distribute such fund, and to determine all rights of claimants thereto." Section 35, Article II has been interpreted as a permissive grant of authority to the General Assembly and not a limitation upon its authority. *State ex rel. Michaels v. Morse, supra*, 165 Ohio St. at 603, 60 O.O. at 533, 138 N.E.2d at 663.

{¶ 19} Haylett contends that Section 35, Article II of the Ohio Constitution was violated because the BWC transferred its duty to administer the workers' compensation system to a private entity.

{¶ 20} MCOs manage only the medical aspect of state-funded workers' compensation medical benefits claims. MCOs coordinate treatment plans and review the plans to ensure that a claimant's treatment is medically necessary for the diagnosis and treatment of the allowed conditions. MCOs reimburse medical

6

providers with payment received from the BWC. MCOs do not determine the compensability of claims.

{¶ 21} The BWC supervises MCOs and continually monitors and evaluates their performance. The BWC regularly reviews the certification of each MCO. The BWC makes the final decision as to payment and issues payment from the State Insurance Fund to MCOs so they can reimburse individual medical providers.

{¶ 22} Any decision by an MCO regarding treatment or payment is nonbinding and subject to multiple levels of review. The final decision as to any aspect of the claim lies with the Industrial Commission. Under the MCO program, injured employees receive the same benefits as under the previous system.

{¶ 23} R.C. 4121.62(A)(1) enables the Administrator of Workers' Compensation to "[c]ontract with any public or private person  for the rendition of rehabilitation services." The BWC has contracted with private persons and entities to perform independent medical examinations and disability assessments, to review medical files, and to pay hospital bills. The state also contracts with outside financial advisers for advice concerning and management of money in the state fund.

{¶ 24} We do not agree that the MCO program constitutes an attempt to privatize the state's workers' compensation system in violation of Section 35, Article II of the Constitution. See *State ex rel. Turner v. United States Fid. & Guar. Co. of Baltimore* (1917), 96 Ohio St. 250, 117 N.E. 232 (legislation authorizing employers to self-insure for workers' compensation upheld as constitutional). The state supervises the MCOs and makes the final decision as to the award and payment of compensation. Further, injured employees are entitled to receive the same benefits they would have received under the prior system. We hold that the MCO program is not an improper delegation of authority to a private entity and therefore does not violate Section 35, Article II of the Constitution on that ground.

**{¶ 25}** Haylett also argues that an MCO can terminate medical treatment and that the termination can only be appealed by using the mandatory dispute resolution process. Haylett contends that this process results in delays and hardships that violate Section 35, Article II.

**{¶ 26}** Under the prior system, the BWC could refuse to authorize payment for treatment without advance notice or a hearing. BWC claims examiners, who usually had no formal medical training, conducted medical reviews for reasonableness and necessity. If the BWC terminated authorization for continued treatments, the claimant could appeal that decision to the Industrial Commission. At that time, the claimant was afforded his or her first opportunity to submit additional evidence or argument. This process normally took several months to complete.

**{¶ 27}** The MCO dispute resolution process mandates two independent reviews by medical experts within weeks of the MCO's initial determination. If the claimant receives an adverse decision, the claimant is given an explanation for the denial and has the opportunity to submit additional evidence. Employers and providers may also take advantage of this process. Mandatory deadlines ensure that the dispute resolution process moves quickly.

**{¶ 28}** We do not believe that a dispute resolution process that provides for two reviews by medical experts over a period of less than a month and that affords a claimant the opportunity to submit additional information in support of the treatment requested constitutes a violation of the claimant's constitutional right to workers' compensation benefits. We also do not believe that this non-binding review system is quasi-judicial in nature.

**{¶ 29}** MCOs do not usurp the power and authority of the state to administer the State Insurance Fund or to determine the terms and conditions of payment. Accordingly, we hold that the statutory scheme authorizing the MCO program does not violate Section 35, Article II of the Ohio Constitution.

*Due Process*

**{¶ 30}** The Fourteenth Amendment to the United States Constitution prohibits any state from depriving "any person of life, liberty, or property, without due process of law." Section 16, Article I of the Ohio Constitution states that "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law."

**{¶ 31}** In a due process challenge pursuant to the Fourteenth Amendment, the first inquiry is whether a protected property or liberty interest is at stake. *Am. Mfrs. Mut. Ins. Co. v. Sullivan* (1999), 526 U.S. 40, 119 S.Ct. 977, 989, 143 L.Ed.2d 130, 149; *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.

**{¶ 32}** R.C. 4123.54 states that "[e]very employee, who is injured * * * is *entitled* to receive * * * compensation for loss sustained on account of the injury * * * as * * * provided by this chapter." (Emphasis added.) Thus, it is apparent that Haylett is entitled to, and therefore has a property interest in, her workers' compensation medical benefits to the extent that they are compensable pursuant to R.C. Title 41.

**{¶ 33}** R.C. 4123.66 provides that the Administrator of Workers' Compensation shall pay for medical services that "he deems proper" and instructs the Administrator to adopt rules that govern the furnishing of payment for medical services. Accordingly, we turn to the Ohio Administrative Code to determine when an injured worker becomes entitled to benefits.

**{¶ 34}** Ohio Adm.Code 4123-3-09(C)(3) provides that "[t]he burden of proof is upon the claimant (applicant for workers' compensation benefits) to establish each essential element of the claim by preponderance of the evidence." Among other things, the applicant must prove that the applicant has a right to file for workers' compensation benefits, that the application was filed on time, that the alleged injury or occupational disease was sustained or contracted in the course of

employment, and "[a]ny other material issue." Ohio Adm.Code 4123-3-09(C)(3). To be considered for payment, medical supplies and services must be "medically necessary for the diagnosis and treatment of conditions allowed in the claim, [be] causally related to the conditions allowed in the claim, and [be] rendered by a health care provider." Ohio Adm.Code 4123-6-25(A).

{¶ 35} The BWC has not argued that Haylett did not comply with these requirements; indeed, the BWC had been paying for treatment for Haylett since late 1994. Instead, the BWC argues that Haylett must prove that she is entitled to ongoing medical benefits, citing Ohio Adm.Code 4123-3-09(C)(1) and (3)(e). Nothing in these sections, or, as far as we can discern, anything else in the statutory scheme, states that a claimant has an ongoing obligation to establish eligibility for workers' compensation medical benefits.

{¶ 36} Ohio Adm.Code 4123-3-09(C)(4) does provide that the BWC may "at any point in the processing of an application of benefits, require the employee to submit to a physical examination or may refer a claim for investigation." This section and the subsequent sections of Ohio Adm.Code 4123-3-09 appear to be focused on the original application for benefits. Accordingly, we do not see them as imposing an ongoing obligation on a claimant.

{¶ 37} In *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 66, 577 N.E.2d 1095, 1097, we stated that a "claimant has the burden of supplying medical evidence to support a temporary total disability." However, a significant factor in that case was the fact that the claimant's own doctor did not believe that the claimant was temporarily and totally disabled. *Id.* In this case, Haylett's medical care provider believes that she needs ongoing medical attention. Accordingly, *Jeep Corp.* does not control this case.

{¶ 38} The BWC describes the current situation as a "refusal to authorize *future* medical treatment" and not a termination of medical benefits. (Emphasis *sic*.) It states that the distinction is significant; we see the distinction as being

10

without a difference. Haylett began receiving workers' compensation medical benefits in late 1994, and whatever you term the MCO's subsequent action, the result was the same—Haylett was no longer receiving medical benefits. We conclude that upon satisfying all initial requirements for receiving workers' compensation medical benefits, Haylett became entitled to receive those benefits pursuant to R.C. 4123.54. Accordingly, she was protected by due process.

{¶ 39} To determine what process is due, it is necessary to consider three factors:

(1) the private interest that will be affected by the official action;

(2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

(3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 334-335, 96 S.Ct. at 902-903, 47 L.Ed.2d at 33.

{¶ 40} In this case, the interest affected was the continuation of workers' compensation medical benefits to which Haylett was entitled pursuant to R.C. 4123.54. Those benefits enabled Haylett to procure chiropractic services for treatment of a chronic health problem.

{¶ 41} The risk that Haylett's medical benefits would be erroneously deprived due to the MCO appeals process was not great. The process provides for two timely reviews, a third review by the BWC, and a final appeal to the Industrial Commission. The primary risk engendered by the system is the loss of time. In

this case, that loss of time was not critical because the deprivation of services did not endanger Haylett, whose medical need was not life-threatening.[1]

{¶ 42} The governmental interest involved is primarily financial. The MCO program is designed, at least in part, to minimize the amount expended, while ensuring that the workers' compensation system serves its primary function of meeting the needs of its constituents.

{¶ 43} Anthem's decision to terminate medical benefits was not binding. The MCO appeals process and the statutory appeals process of R.C. 4123.511 were available to Haylett. She ultimately received a hearing, albeit after the initial termination of benefits. After reviewing the three factors set forth in *Mathews* and applying them to this case, we conclude that Haylett was not deprived of due process. See *Caddell v. Ohio Bur. of Workers' Comp.* (1994), 71 Ohio St.3d 300, 302, 643 N.E.2d 1075, 1076 (a deprivation of procedural due process does not occur when a claimant is initially deprived of a hearing if a hearing is subsequently provided to the claimant). The Industrial Commission ultimately authorized limited treatments, and our conclusion is reached irrespective of that decision.

{¶ 44} Haylett also argues that Anthem has a vested interest in terminating her medical treatments so that its decision was biased. This argument is contradicted by the fact that Anthem's decisions are not binding and are subject to review by the Industrial Commission.

{¶ 45} Haylett also fails to establish that Anthem's decision that her chiropractic treatments were no longer necessary promotes a financial interest of Anthem's. Anthem's MCO fee is not based upon the number of claims pending or closed, nor is it related to any particular cost-cutting measure. We reject Haylett's

---

1. We can conceive of circumstances in which a critical medical need could go unmet because of the MCO appeals process. Under that circumstance, an expedited process, which allows a claimant to demand an immediate evidentiary hearing, would be of considerable value.

argument that Anthem's decision was motivated by an impermissible financial incentive.

*Conclusion*

**{¶ 46}** A writ of mandamus is an extraordinary remedy. To be entitled to a writ of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty to perform the requested act on the part of the respondent, and no plain and adequate remedy at law for the relator. *State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.* (1994), 71 Ohio St.3d 504, 510, 644 N.E.2d 361, 367. Haylett has failed to establish that she has a clear legal right to the relief requested. We, therefore, deny her request for a writ of mandamus.

**{¶ 47}** For a writ of prohibition to issue, the relator must prove "(1) that the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) that the exercise of that power is unauthorized by law, and (3) that denying a writ will result in injury for which no other adequate remedy exists in the ordinary course of law." *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 178, 631 N.E.2d 119, 121; *State ex rel. Ruessman v. Flanagan* (1992), 65 Ohio St.3d 464, 465, 605 N.E.2d 31, 33. We deny Haylett's request for a writ of prohibition because we find that the MCO program is authorized by law and that it does not unlawfully exercise quasi-judicial authority.

*Writs denied.*

MOYER, C.J., RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment only.

DOUGLAS, J., dissents.

————————————