DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Jeffrey Dixon, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied him living maintenance benefits, and ordering the commission to find that he is entitled to an award of those benefits.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ. R. 53(C) and Section (M), Loc. R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found the requested writ of mandamus should be denied because there was evidence to support the commission's finding that, although respondent-employer, Airborne Express ("Airborne"), agreed to pay benefits to relator while he was participating in a vocational rehabilitation program ("VRP") set up and administered by the Rehabilitations Services Commission ("RSC"), and although RSC was apparently creating a vocational plan for relator, the plan was not yet in place when relator enrolled in a four-year degree program at Wright State University. As a result, the record did not support relator's argument that Airborne approved a specific VRP or that, by agreeing to pay benefits while relator participated in a VRP, Airborne was also agreeing to pay while relator pursued a four-year college degree program that neither the Ohio Bureau of Workers' Compensation nor Airborne had certified as an approved VRP. Thus, the magistrate determined relator had not met his burden of proof before the commission nor established the commission abused its discretion by denying his application for living maintenance benefits.
 {¶ 3} Relator has filed objections to the magistrate's decision in which he argues that there was no evidence supporting Airborne's contention that any VRP plan had to be approved by Airborne prior to implementation because Airborne had already approved RSC to devise and administer the plan. Thus, relator argues that because he contacted RSC, cooperated in devising a plan, and began a college program in furtherance of the plan, he met his obligations and is entitled to benefits from Airborne.
 {¶ 4} The commission has filed a memorandum contra in which it argues the record in this case does not contain a formalized plan, and that documents relator purports to be evidence of a plan are incomplete and do not reflect the approval or acceptance of the parties. The commission's position boils down to one sentence: "Airborne's acknowledgement that it would accept a vocational plan devised by RSC does not give Dixon carte blanche to undertake whatever he wants at Airborne's expense."
 {¶ 5} Upon a review of the magistrate's decision and an independent review of the evidence, this court finds there is no error of law or other defect on the face of the magistrate's decision and adopts it as its own. We agree with the commission that there was insufficient support for relator's claim that RSC had formalized and gained approval for a VRP in time for relator's chosen course of study to be considered in compliance with a VRP. Therefore, relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
Lazarus, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jeffrey Dixon,: Relator, : v. : No. 04AP-155 Airborne Express and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 23, 2004 Weisser Wolf, and Lisa M. Clark, for relator.
Buckingham, Doolittle Burroughs, LLP, Carla J. Cannon and Brett L.Miller, for respondent Airborne Express, Inc.
Jim Petro, Attorney General, and Thomas L. Reitz, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Jeffrey Dixon, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied him living maintenance benefits and ordering the commission to find that he is entitled to an award of those benefits.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on December 27, 1993, and his claim has been allowed for: "lumbar strain; herniated L5-S1; degenerative disc disease; post laminectomy syndrome."
 {¶ 8} 2. On August 31, 2001, relator filed a motion requesting authorization of a vocational rehabilitation plan and an award of living maintenance benefits while participating in the plan. Relator attests, in his brief, that a copy of the plan was attached to his motion; however, the magistrate does not find it in the record.
 {¶ 9} 3. By letter dated September 6, 2001, Jon E. Marks, a claim specialist with Kemper Insurance Companies, issued the following letter to relator's counsel on behalf of respondent Airborne Express, Inc. ("employer"):
Enclosed is a copy of our acceptance of the motion filed for the above claimant. As you recall, the motion requested a vocational rehabilitation plan and "Living Maintenance". We have agreed to the authorization of the vocational rehabilitation plan and will pay the claimant Nonworking Wage Loss benefits while he is participating in the plan — providing he can demonstrate that he is actively and aggressively engaged in a good faith job search. * * *
 {¶ 10} 4. On the same day, Mr. Marks sent a letter to the Ohio Bureau of Workers' Compensation ("BWC") informing them of the following:
We are authorized to assist Airborne Freight Corporation in the administration of their self-insured workers' compensation program. We have received the attached motion forwarded by the claimant's representative. Please be advised the self-insured employer agrees to the motion to the extent of the following:
[One] The employer authorizes a vocational rehabilitation plan for the claimant to be administered by the State of Ohio RSC (Rehabilitation Services Commission), per the claimant's request. The case has been referred to the RSC and a vocational plan is being created.
[Two] The employer agrees to pay the claimant Nonworking Wage Loss benefits while he is participating in the Vocational Rehabilitation Plan. Specifically, the employer will continue the payment of Nonworking Wage Loss benefits while the claimant is able to demonstrate that he is actively and aggressively conducting a good faith job search.
 {¶ 11} 5. The record contains the September 27, 2001 vocation evaluation report prepared by William J. Braunig issued after referral was made to him by Carole Steele of the Rehabilitation Services Commission. In that report, Mr. Braunig recommended direct placement services, as relator appeared to have retained the physical capacity to perform his past work as a manager and mortgage loan collector, and that he could be capable of performing similar work in collections and bookkeeping; formal skills training in the business field at the associate degree level; or assistive technology as needed.
 {¶ 12} 6. The motion came on for hearing before a district hearing officer ("DHO") on April 29, 2002, and was granted to the following extent:
By the subject motion, the claimant seeks dual relief consisting of authorization for a vocational rehabilitation plan and an award of living maintenance benefits while he participates in said plan.
By letter dated 9-6-2001, the self-insured employer agreed to authorize the claimant's vocational rehabilitation plan. The District Hearing Officer therefore finds the claimant's request as set forth on the C-86 motion to be moot regarding the plan itself.
By the same letter, the self-insured employer stated that it would pay the claimant non-working wage loss benefits while he is participating in the plan. The District Hearing Officer finds that the claimant is entitled to an award of living maintenance while participating in the plan. The plan has not yet commenced. It is therefore the finding and order of the District Hearing Officer that once the claimant enters the approved vocational rehabilitation plan that living maintenance benefits are authorized and ordered paid by the self-insured employer pursuant to the Ohio Administrative Code.
This order is based upon the evidence in file and the evidence adduced at hearing. All evidence in file was considered in reaching this decision.
 {¶ 13} 7. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on June 21, 2002, and resulted in an order modifying the prior DHO order as follows:
It is the finding of the Staff Hearing Officer that the self insured employer has approved a vocational rehabilitation plan to be administered by the State of Ohio R.S.C.
The claimant has not begun his participation in the rehabilitation plan; therefore, wage loss/living maintenance benefits are not appropriate at this time. The self insured employer has agreed to pay benefits of living maintenance or wage loss when the claimant begins his vocational educational rehabilitation program.
This order is based upon the employer's letter dated 9/6/01.
 {¶ 14} 8. No further appeals were filed regarding that order.
 {¶ 15} 9. On May 10, 2002, the employer filed a motion requesting that relator's wage loss benefits be terminated. By order dated October 18, 2002, an SHO denied the employer's motion as follows:
It is the finding of the Staff Hearing Officer that the employer's C-86 motion filed 5-10-02, requesting termination of wage loss benefits is denied.
The injured worker has never received wage loss benefits in this claim. Although the employer's letter dated 9-6-01, agrees to pay the injured worker non-working wage loss benefits while he was in the vocational rehabilitation plan; wage loss benefits were not paid. The injured worker is currently receiving living maintenance benefits.
This order is based on the employer's letter dated 9-6-01 and the injured worker's testimony.
 {¶ 16} 10. On October 21, 2002, relator filed a motion requesting living maintenance benefits beginning September 6, 2002, based upon his participation in an educational rehabilitation program at Wright State University. Presumably, relator attached a September 6, 2002 Individualized Plan for Employment, part of which appears in the record at pages 13-16. The plan is signed only by a counselor named Kristi Goldley indicating tuition and books for "WSU/BVR" indicating September 6, 2002 as a start date. Neither relator nor the employer signed this document.
 {¶ 17} 11. The matter was heard before a DHO on January 13, 2003, and resulted in an order denying relator's motion as follows:
It is the finding of the Hearing Officer that the injured worker filed a C-86 motion on 10/21/2002 requesting Living Maintenance benefits beginning 09-06-2002.
On 09-06-2002, the injured worker started a program at Wright State University. The Hearing Officer finds that the program that the injured worker has enrolled in at Wright State University is not a certified vocational rehabilitation plan. There is no documentation that the four years of college at Wright State University were approved as a rehabilitation plan by the self-insured employer. The selfinsured employer has stated that they will pay Living Maintenance once a certified vocational rehabilitation plan is in place.
At this time, as the injured worker is not in a certified vocational rehabilitation plan, Living Maintenance benefits from 09-06-2002 to 01-13-2003 are denied.
This order is based on the lack of documentation showing that the injured worker is enrolled in a certified rehabilitation plan.
 {¶ 18} 12. On appeal, the matter was heard before an SHO on April 30, 2003, and resulted in an order affirming the prior DHO order as follows:
It is the finding of the Staff Hearing Officer that the injured worker's request for the payment of Living Maintenance benefits, filed 10/21/2002, is denied.
It is the finding of the Staff Hearing Officer that the injured worker has enrolled in a 4 year College Degree Program which has not been certified as an approved vocational rehabilitation plan by the Bureau of Workers' Compensation or the self-insured employer. Therefore, Living Maintenance benefits are not appropriate and will not be ordered.
This order is based upon O.R.C. 4123-18-16(C)(D).
 {¶ 19} 13. Further appeal by relator was refused by order of the commission mailed June 16, 2003.
 {¶ 20} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 21} Relator contends that the commission abused its discretion by denying his request for living maintenance benefits based upon a finding that relator was not participating in a certified vocational rehabilitation plan. Relator contends that the order is not supported by any evidence in the record and that res judicata should have applied. In that regard, relator asserts that the October 18, 2002 SHO order already decided the matter and that, on April 30, 2003, the SHO should have simply declared him eligible for living maintenance benefits without reexamining the issue. For the following reasons, this magistrate disagrees.
 {¶ 22} Res judicata operates to preclude the relitigation of a point of law or fact which was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction. State exrel. Kroger Co. v. Indus. Comm. (1998), 80 Ohio St.3d 649. This principal applies to proceedings before the commission. Id. at 650.
 {¶ 23} In the present case, the October 18, 2002 hearing before an SHO was specifically being held based upon a motion filed by the employer seeking to terminate wage loss compensation. By contrast, the SHO order of April 30, 2003, was based upon a motion filed by relator seeking living maintenance benefits. As such, contrary to relator's assertions, while the same parties are involved, the same issue was not litigated.
 {¶ 24} Furthermore, it must be remembered that the burden is always on claimant to prove that they are entitled to any type of workers' compensation benefits, including living maintenance benefits. State exrel. Haylett v. Ohio Bur. of Workers' Comp. (1999), 87 Ohio St.3d 325. In the present case, the evidence presented shows that the employer agreed to pay benefits to relator while he was participating in a vocational rehabilitation program set up and administered by the Rehabilitation Services Commission ("RSC"). As of September 6, 2001, it appears that relator had been referred to RSC and that a vocational plan was being created. The record contains the September 27, 2001 vocational evaluation report prepared by William J. Braunig, a certified vocational evaluation specialist who issued a report after relator was referred to him by Carole Steele from RSC. In that letter, Mr. Braunig recommended direct placement services, as relator appeared to have retained the physical capacity to perform his past work as a manager and mortgage loan collector, and that he could be capable of performing similar work in collections and bookkeeping; formal skills training in the business field at the associate degree level; or assistive technology as needed. It is understood that an "associate degree" is a two-year degree. The evidence shows that relator is currently enrolled at Wright State University seeking a four-year degree. While the record does contain certain pages from a plan drawn up by Kristi Goldley, nothing in the record shows that the employer specifically approved either the September 27, 2001 report of Mr. Braunig, or the plan written by Ms. Goldley.
 {¶ 25} Based on the foregoing, it is this magistrate's decision that relator did not meet his burden of proof in front of the commission and relator has not established that the commission abused its discretion by denying his application for living maintenance benefits. As such, this magistrate finds that relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks STEPHANIE BISCA BROOKS MAGISTRATE