**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENNTH CIRCUIT

ROBERT ALY,

       Plaintiff - Appellant,

  v.

ROCKY MOUNTAIN HOLDING
L.L.C, d/b/a Rocky Mountain
Helicopters and Rocky Mountain
Helicopters, Inc.;

       Defendants,

KATHY DAVIS, former Director of
Emergency Services of University of
New Mexico Hospital; PENNY
GRINER, former Chief Flight Nurse,

       Defendants - Appellees.

No. 98-2273

(D. New Mexico)

(D.C. No. CIV-96-1481-JC)

**ORDER AND JUDGMENT** *

Before **HENRY** , **McKAY** , and **ANDERSON** , Circuit Judges.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Robert Aly, a helicopter pilot, sued his employer, Rocky Mountain Holding, L.L.C. ("Rocky"), for wrongful termination under state law.[1] He subsequently amended his complaint to add a separate cause of action under 42 U.S.C. § 1983 against defendants Kathy Davis, former Director of Emergency Services, and Penny Griner, Chief Flight Nurse, employees of the University of New Mexico Hospital that contracted with Rocky. The complaint asserted that Davis and Griner, under color of state law, conspired with Rocky to cause Aly to be fired. At the conclusion of Aly's case-in-chief, the district court granted judgment as a matter of law in favor of the state hospital defendants.[2] Aly appeals the judgment arguing that the district court erred when it found insufficient evidence to present a jury question on the conspiracy issue. For the reasons stated below, we affirm.

## BACKGROUND

### Rocky Mountain Helicopters, Inc.

Rocky, based in Provo, Utah, is the country's largest hospital helicopter service with over forty contracts with hospitals across the nation. See Appellant's App. Vol. III at 554. Rocky employs pilots and assigns them to the various

---

[1]Aly and Rocky later settled that claim.

[2]The district court had previously dismissed state law claims against Davis and Griner on the grounds of state immunity under the New Mexico Tort Claims Act. Aly did not appeal that ruling.

hospital contract locations. The company customarily transfers pilots from one contract location to another as necessary.

### *Rocky's Contract with University of New Mexico Hospital*

Rocky contracted with the University of New Mexico Hospital ("UNMH"), a state entity located in Albuquerque, New Mexico, to provide air ambulance helicopter service known as "Lifeguard." Under the contract, each Rocky pilot was required to "maintain a Federal Aviation Administration (FAA) helicopter commercial instrument rating, demonstrate to [Rocky] supervisory personnel a high degree of aptitude for the type of flying required, and <u>be acceptable to the hospital</u> ." Ex. 31 at 3, Appellant's Addendum at 153 (Agreement for Emergency Air Transport Services) (emphasis added). This provision gave the hospital a contractual right to approve or disapprove Rocky pilots and permitted UNMH to request that pilots be reassigned off the UNMH contract. UNMH had exercised the provision twice in the past causing Rocky to reassign pilots from UNMH to Rocky's other customer locations. <u>See</u> Appellant's App. Vol. IV at 790-92. No evidence shows that UNMH exercised its right to have Aly reassigned. The contract did not give UNMH the right to fire a pilot. <u>See</u> <u>id.</u> at 750.

### *Robert Aly*

-3-

Mr. Aly, an experienced helicopter pilot, worked for Rocky from 1988 until his termination on January 22, 1996, and had flown for Rocky at the UNMH site since 1989. In May 1993, Rocky selected Aly to be the site safety officer. By late 1993, the safety committee, comprised of UNMH and Rocky staff with Aly as chair, recommended that an expert study three issues: the hospital's choice of a single-engine helicopter over a twin-engine helicopter, the possibility of purchasing an on-board collision avoidance system, and the positioning of the helipad refueling station. Aly drafted a letter to UNMH management on behalf of the committee detailing their safety concerns. A committee member refused to allow the letter out of the committee, apparently because Ms. Davis, her supervisor, was unhappy about the letter.

In February 1994, Pat Conway, Rocky's contract manager for UNMH, came to Albuquerque. Aly testified that Conway said Aly would probably be fired if he continued to raise the safety issues in the letter. Conway denied this but testified that he advised Aly to drop the safety issues and remain neutral, or risk conflict with hospital management. Conway testified that he was trying to protect Aly from removal from the contract.

*Alleged Conspiracy*

Mr. Aly relies on five events as the primary evidence to show that Davis and Griner conspired with Rocky to fire Aly in retaliation for discussing safety issues: a 1994 letter from Davis to Aly; a December 1995 meeting including Griner and Conway; a December 19, 1995, letter from Griner to Conway; a January 11, 1996, draft letter from Conway to Aly; and phone calls from Conway to Griner on the day of Aly's termination, January 22, 1996.

In May 1994, Aly received a memorandum from Davis attached to a letter from Rocky's Chief Pilot rejecting the need for the avoidance system or repositioning of the refueling station. Davis' memorandum stated:

> I am sure this [letter] will answer the committee's questions. I hope that the committee under your leadership will begin to examine other areas . . . I would like to see in writing the goals of your committee for the coming year. Much time and effort is spent in the endeavor and I would like to see some tangible results.

Appellant's Addendum at 88. After receiving the memo, Aly resigned as safety officer. However, after the helicopter experienced a series of on-the-ground engine lock-ups, Aly continued to voice his safety concerns, including the possibility of an in-flight engine lock-up. In July 1995, Aly wrote Rocky management detailing his unanswered safety worries and his concern that he was experiencing retaliation for his safety activism including denial of promotion to

site manager. Aly also applied for a transfer to Rocky's Tucson operation but received no response.

In October 1995, Ms. Davis left UNMH, shifting the Lifeguard program authority to Griner. In December 1995, at a staff meeting attended by Conway and Griner, the 1994 safety committee letter was discussed. A witness who attended the meeting testified that Griner was "disgusted" to have to discuss the safety issues again. See Appellant's App. at 882.

Ms. Griner wrote to Conway on December 19, 1995:

> After reviewing the [July 1995] document that was written by Mr. Aly, we request that RMH respond to us (Lifeguard Administration) regarding the areas of issue [sic] raised. There are several areas that would appear to be personal opinion and not the feelings of the other pilots in the program or RMH. It is apparent that Mr. Aly has significant lack of job satisfaction. His demonstrated lack of sense of team is detrimental to the program. These two areas are of concern to us. The importance of all aspects of the program involved being a strong team can not be overemphasized considering our mission.

Appellant's Addendum at 135. At a January 3, 1996, meeting with his supervisor, Aly was told that Griner had a copy of his July 1995 letter and that Conway wanted Aly to quit interfering with hospital policy. Aly called Griner that day to discuss the letter but Griner denied having it and declined to meet with Aly.

About January 11, 1996, Conway drafted—but never sent—a disciplinary letter to Aly to be copied to Griner. On January 22, 1996, when Aly failed his annual Rocky flight check examination, Rocky fired him. Aly alleges that his

examination was unfair and a pretext for his termination for raising safety concerns. As noted above, Aly settled his wrongful termination claim against Rocky.

Telephone records show calls from Conway's extension before and after the firing to Griner's extension at UNMH and at home. The records show that the call before the firing lasted less than five minutes and the two calls after the firing lasted less than one minute each. See Appellant's Addendum at 125. No evidence was introduced regarding the content, if any, of the phone conversations.

Other Lifeguard employees testified that Conway came to UNMH shortly after Aly's firing because the flight crew was concerned that Aly had been fired for raising safety concerns. Two employees stated they had also feared retaliation from Davis and Griner for raising safety issues and were unpersuaded by Conway's explanation.

## ANALYSIS

We review the district court's grant of a judgment as a matter of law de novo, applying the same standard as the district court under Fed. R. Civ. P. 50 that "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1); see Six v. Henry, 42 F.3d

582, 583 (10th Cir. 1994). On appeal, Aly alleges that there was sufficient

evidence of conspiratorial state action to go to a jury.                      [3]

To prevail on a Section 1983 claim of deprivation of constitutional rights,

Aly must show that he was terminated as a result of state action.          See Lugar v.

Edmondson Oil Co., Inc.   , 457 U.S. 922, 935 (1982);     see also  Gallagher v. Neil

Young Freedom Concert   , 49 F.3d 1442, 1447 (10th Cir. 1995). "[T]he

under-color-of-state-law element of § 1983 excludes from its reach merely private

conduct, no matter how discriminatory or wrongful."        American Mfrs. Mut. Ins.

Co. v. Sullivan  , 526 U.S. 40, __, 119 S. Ct. 977, 985 (1999).

The Supreme Court "has taken a flexible approach to the state action

doctrine, applying a variety of tests to the facts of each case."          Gallagher , 49 F.3d

at 1447 . Those tests to determine state action include the nexus, symbiotic

relationship, joint action, and public function tests.       See id.  Because we

described and analyzed the four alternative state action tests thoroughly in

Gallagher , see id. at 1447-57, we only summarize them here.

First, under "the nexus test, a plaintiff must demonstrate that 'there is a

sufficiently close nexus' between the government and the challenged conduct

---

[3]Mr. Aly also alleges that the district erred, in determining in summary judgment prior to trial, that the single- versus twin-engine issue was not of public concern and did not enjoy First Amendment protection. Because we affirm the district court's judgment on the state action issue, it is unnecessary to address this second issue.

such that the conduct 'may be fairly treated as that of the State itself.'"  See id. at 1448 (quoting Jackson, 419 U.S. at 351).  Further, "a state official's mere approval of or acquiescence to the conduct of private party is insufficient to establish the nexus required for state action."  Id. at 1450.

Alternatively, a symbiotic relationship constitutes state action "if the state 'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.'" Id. at 1451 (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961)).  We noted in Gallagher that "[s]ubsequent Supreme Court decisions have read Burton narrowly."  Id. at 1451.

Third, state action can be "present if a private party is a 'willful participant in joint action with the State or its agents.'"  Id. at 1453 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)).  As with the other tests, "the mere acquiescence of a state official in the actions of a private party is not sufficient."  Id. (citing Flagg Bros. v. Brooks, 436 U.S. 149, 164 (1978)).  "[C]onstitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."  Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Finally, the public function test is narrow and difficult to satisfy.  A private party is a state actor if the state delegates to it "a function 'traditionally

-9-

exclusively reserved to the State.'" <u>Gallagher</u>, 49 F.3d at 1456 (quoting <u>Jackson</u>, 419 U.S. at 352). The Supreme Court has found only a few areas, including the administration of election of public officials, to be public functions. <u>See</u> <u>Gallagher</u>, 49 F.3d at 1456.

Applying any of these four tests, especially the joint action test, which Aly asserts to be his strongest argument, Aly fails to demonstrate sufficient evidence of state action. It is undisputed that Rocky, a private company, had sole lawful authority to fire Aly. Davis and Griner expressed dissatisfaction about Aly to Rocky, as they were entitled to do under the contract. Rocky could have addressed Griner's and Davis's complaints by transferring Aly to another location, an option that was exercised twice before. Complaints about Aly do not equal the power to terminate and cannot create state action.

While the circumstances surrounding his termination may invite speculation, Aly has failed to demonstrate sufficient evidence of a conspiracy between Davis, Griner and Rocky to establish that Davis and Griner were the effective terminating force. Even given the letters to and from Conway and Griner the month before and the phone calls from Conway to Griner the day of Aly's termination, a jury would still have to speculate to determine that Griner conspired with Rocky to terminate Aly in retaliation for his safety activism, rather than, for instance, simply to seek a transfer or to address different matters

altogether. There is not even evidence showing who participated in the calls. The phone calls totaled only a few minutes and we have no evidence of what, if anything, was discussed, or by whom. [4]

To prove a conspiracy between private parties and the state under Section 1983, the plaintiff must show a joint participation, agreement, or "meeting of the minds" to violate constitutional rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 158 (1970). And, there must be sufficient evidence of a conspiracy to prevent the jury from "engag[ing] in sheer speculation and conjecture." Six, 42 F.3d at 585.

We have uniformly rejected claims of state action that are merely speculative in nature. See Gallagher, 49 F.3d at 1456 (finding insufficient evidence that University officials jointly participated in pat-down searches by a security contractor); Carey v. Continental Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987) (holding that a private company's complaint "about Carey's presence to a . . . police officer who, acting within the scope of his statutory duties, arrested Carey after questioning him, does not, without more, constitute state action").

---

[4]"[N]umerous telephone calls" between citizens and their elected officials were not "improper collusion" to imply a conspiracy since citizens have the right to voice their opinions. Fry v. Board of City Comm'rs, 7 F.3d 936, 942-43 (10th Cir. 1993) (finding insufficient evidence of an unlawful conspiracy under § 1983).

In a case with similar facts to Aly's, a respiratory therapist sued her employer (a private corporation) and a state hospital under 42 U.S.C. § 1983 for retaliatory termination because she spoke out against deficiencies in patient care. See Frazier v. Board of Trustees of Northwest Mississippi Reg. Med. Ctr., 765 F.2d 1278, 1281 (5th Cir. 1985). Her employer contracted with the hospital to staff and run the hospital's respiratory therapy department. The company allegedly based its termination decision on information in her personnel file created by the hospital. The court affirmed summary judgment in favor of the hospital defendants "based on a lack of evidence that [the hospital] or any of its employees had anything to do with the decisions . . . to discharge [plaintiff]." Id. at 1282. The court held that "decisions of a particular private . . . company to demote and to discharge" an employee is not state action. Id. at 1288.

We conclude that Aly has not established a question of fact for the jury on his claim that Davis and Griner conspired to have him fired by his employer. The district court correctly prevented the submission to a jury of an issue that would require "sheer speculation and conjecture." Six, 42 F.3d at 585.

**CONCLUSION**

For the reasons set forth above, the district court's order granting defendants' motion for a judgment as a matter of law is hereby AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge