Filed:  October 6, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON


JOHN GOODSON,
ANTHONY SANTOS, PAUL WASHBURN,
JAMES MICHAUD, DONA ALDRICH,
and SALVADOR CANTU,

Petitioners,

v.


PUBLIC EMPLOYEES RETIREMENT SYSTEM,

Respondent.

(Agency Nos. 900900, 900901, 900903, 900915, 900916, 900937;
SC S059056)

En Banc

On certification from the Court of Appeals in a judicial review from a ruling on summary determination and final order of the Public Employees Retirement Board.

Argued and submitted January 6, 2011.

John E. Hoag, Snyder and Hoag, LLC, Petersburg, AK, argued the cause and filed the briefs for petitioners.

Michael A. Casper, Assistant Attorney General, Salem, argued the cause for respondent.  With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

DE MUNIZ, C. J.

The order of the Public Employees Retirement Board is affirmed.

1

DE MUNIZ, C. J.

Petitioners seek judicial review under ORS 183.482 of a final order of the Public Employees Retirement Board (PERB). They contest the reduction of their retirement benefits as a result of PERB's efforts to recoup benefit overpayments that petitioners had received because of an erroneous 20 percent earnings credit for 1999. The Court of Appeals certified the matter to this court under ORS 19.405. We affirm PERB's final order.

This is a companion case to our decision today in *Arken v. City of Portland*, ___ Or ___, ___ P3d ___ (2011). To avoid unnecessary repetition, we will refer frequently to the various detailed factual and legal discussions contained in that opinion. In particular, *Arken* sets out the extensive legal and historical background surrounding PERS, the 20 percent earnings credit granted by PERB to certain members' regular retirement accounts in 1999, and the later litigation and legislation that resulted instead in an 11.33 percent credit for that year. ___ Or at ___ (slip op at 5-15).

As in *Arken*, petitioners in this case are also "Window Retirees," meaning (among other things) that they had retired effective on or after April 1, 2000, but before April 1, 2004. *See* ___ Or at ___ (slip op at 1 n 1) (defining "Window Retirees"). In 2007 and 2008, PERB recalculated petitioners' retirement benefits to reflect an 11.33 percent credit for 1999 and sought to recoup the overpayments on their retirement benefits that had resulted from the prior 20 percent credit. Petitioners challenged those recalculations, first before an administrative law judge (ALJ) of the Office of Administrative Hearings, then before PERB. In doing so, petitioners did not challenge

1

the mathematical recalculations of their individual benefits by PERB, but challenged instead PERB's legal authority to make those recalculations using an 11.33 percent credit for 1999. Additionally, petitioners sought interest on cost of living adjustments (COLAs) that the legislature had frozen beginning in 2003. Both the ALJ and PERB rejected petitioners' arguments. Petitioners then sought judicial review.

On judicial review, petitioners assign three errors. First, petitioners contend that the reduction in their retirement benefits by PERB unconstitutionally impaired the obligation of contract in violation of Article I, section 21, of the Oregon Constitution.[1] Petitioners assert that PERB promised particular benefits after retirement based on the 20 percent earnings credit in 1999, and that petitioners relied on that promise when they retired.

Petitioners' argument rests on a false premise. The terms of the statutory contract between the state and its retirees are determined by examining the pertinent statutes enacted by the legislature; PERB had no authority to make or change those contractual terms. *Arken*, ___ Or at ___ (slip op at 28); *Strunk v. PERB*, 338 Or 145, 175, 108 P3d 1058 (2005). "[T]he purported promise by PERB to calculate their retirement benefits on a 20 percent crediting allowance for 1999 is a promise that PERB could not lawfully make." *Arken*, ___ Or at ___ (slip op at 28-29). Because petitioners' claim of a contractual right to the 20 percent earnings credit for 1999 relies solely on the alleged promises by PERB, not on any statutory provision, their argument fails. *See*

_____

[1] Article I, section 21, of the Oregon Constitution provides, in part: "No * * * law impairing the obligation of contracts shall ever be passed * * *."

2

*Strunk*, 338 Or at 17 (expressly holding that PERS handbooks, communication from PERB to PERS members, and employer employment policies do not constitute terms of the PERS contract).

In their second assignment of error, petitioners assert that PERB violated procedural due process when it failed to give them notice of the pending litigation challenging the 20 percent earnings credit for 1999. *See Arken*, ___ Or at ___ (slip op at 8-13) (discussing that litigation, the subsequent legislative amendments, and the settlement). Specifically, petitioners contend that, once PERB learned of their plans to retire, it was constitutionally required to give petitioners notice of the pending litigation and to inform them that they could not rely on getting the 20 percent credit.

In addressing petitioners' due process argument, we first must consider whether the state has acted to deprive them of a protected interest in property. *See* US Const, Amend XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *."); *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 US 40, 59, 119 S Ct 977, 143 L Ed 2d 130 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"). Such a protected interest in property requires that the person have a "legitimate claim of entitlement" to a benefit that arises "from an independent source such as state law." *Board of Regents v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972).

In this case, no source of law gave petitioners a legitimate claim of entitlement to a 20 percent earnings credit for 1999. Petitioners have not identified any

3

part of the statutory contract between the legislature and petitioners that would entitle them to a 20 percent earnings credit for 1999, and, as we have explained, PERB lacked authority to promise such a credit. *See Arken*, ___ Or at ___ (slip op at 16-17) (2003 PERS reform legislation did not constitute statutory promise to grant Window Retirees 20 percent credit for 1999); *id*. at ___ (slip op at 28-29) (noting PERB's lack of authority to modify the statutory contract); *Strunk*, 338 Or at 175 (same). Furthermore, petitioners could not reasonably have relied on PERB's representations regarding the 20 percent earnings credit, because they had reason to know that PERB lacked the authority to make such a promise. *Arken*, ___ Or at ___ (slip op at 29). Accordingly, we reject petitioners' second assignment of error.

Petitioners' third assignment of error seeks interest on delayed COLAs. In 2003, the legislature had attempted to recoup the overpayments to the Window Retirees caused by the erroneous 20 percent earnings credit by suspending COLAs on those accounts, rather than seeking repayment by other means. *See Strunk*, 338 Or at 217-18 (discussing legislation and effect); *Arken*, ___ Or at ___ (slip op at 16-17) (summarizing statutory scheme). This court later held that the COLA suspension breached a term of the PERS contract, so the court invalidated that portion of the statute. *Strunk*, 338 Or at 218-25; *see Arken*, ___ Or at ___ (slip op at 15-20) (further explicating that holding in *Strunk*). Petitioners contend that they are entitled to be paid interest on those delayed COLAs.

Interest cannot be awarded here. ORS 238.470 states:

"Interest is not payable on any payment from the Public Employees

4

Retirement Fund unless specifically provided for in this chapter."

Petitioners do not identify any statute or constitutional provision that would authorize or require the interest they seek.[2] Petitioners rely only on their claim that an award of interest is "normal," which is not sufficient to justify ignoring a statutory directive.

The order of the Public Employees Retirement Board is affirmed.

---

[2] During the administrative proceedings, petitioners conceded that PERS was "correct" in its assertion that no statute authorized the payment of interest.