**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-3160

———————

TYLER HAMMOND; ANTONIA HAMMOND, a/k/a Antonia Camera,
*Appellants*

v.

CITY OF WILKES-BARRE; MAYOR THOMAS M. LEIGHTON, Individually and in
his Official Capacity; WILLIAM E. VINSKO, JR., Individually and in his Official
Capacity as City Attorney; LEO A. GLODZIK, III

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 3-09-cv-02310)
District Judge: Hon. Malachy E. Mannion

———————

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2015

———————

Before: SHWARTZ, SCIRICA, and ROTH, <u>Circuit Judges</u>.

(Opinion Filed: March 26, 2015)

———————

OPINION*

———————

SHWARTZ, <u>Circuit Judge</u>.

---

    * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Tyler and Antonia Hammond (the "Hammonds") sued the City of Wilkes-Barre, Pennsylvania (the "City"), Mayor Thomas M. Leighton, Assistant City Attorney William E. Vinsko, Jr., and Leo Glodzik, III (collectively, "Defendants"), alleging that Glodzik was a state actor and, with the approval of these public officials, destroyed the Hammonds' personal property and encroached upon their real property. Because Glodzik is not a state actor and the record does not show that the public officials were involved in Glodzik's actions, the District Court properly granted Defendants' motion for summary judgment and we will affirm.

I

The Hammonds owned a home adjacent to a City-owned property known as the Old River Road Bakery (the "Bakery Property"). The Hammonds stored personal property on the Bakery Property, including "garden pruners," fruit trees, topsoil, radiators, a bathtub, vegetables, firewood, bricks, and metal fencing. App. 160-62.

On July 31, 2009, Glodzik signed an Agreement of Sale (the "Agreement") to purchase the Bakery Property from the City.[1] The Agreement provided that Glodzik would "take possession of the Property in its 'as is' condition as of the date of the Agreement." App. 1015. After signing the Agreement,[2] Glodzik "started cleaning up the

---

[1] Given the unrebutted evidence that the Bakery Property was a single property entirely owned by the City, the Hammonds failed to raise a genuine issue of material fact that the Bakery Property sold to Glodzik did not include the land where the Hammonds stored their personal property.

[2] The Hammonds contend on appeal that Glodzik may have destroyed their property before signing the Agreement in July 2009. This argument fails for two reasons.

2

property" and "secur[ing] the area" to maintain insurance coverage. App. 621. To this end, he removed the Hammonds' personal property and built a fence. He testified that no one from the City directed him to remove the Hammonds' property or was aware that he might do so.

The Hammonds were not present when their property was removed. Their friend, Kevin Dougherty, testified that he recalled seeing Glodzik driving "a bulldozer going through [the Hammonds'] garden" and that Glodzik "was by himself." App. 373-74. Dougherty further testified that, when he confronted Glodzik, Glodzik told him to "[c]all the mayor, call whoever you want, if there is anything on here, you know, I have a right to move it." App. 385. No one saw Leighton on the property, but Darren Stucker, who lived near the Hammonds, testified that he "saw city vehicles," Vinsko, and "a code enforcement guy" for the City near the Bakery Property around the time the Hammonds' property was removed. App. 313. Stucker surmised that the City allowed Glodzik to enter the property to clean it up, as the Bakery Property "was chained and locked with [C]ity locks on it." App. 319.

---

First, the Hammonds did not raise this argument before the District Court, and it is therefore waived. Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 834-35 (3d Cir. 2011). Second, the argument lacks factual support: no witness definitively testified Glodzik's actions predated the Agreement.

In addition to the property destruction, the Hammonds testified that Glodzik erected a fence that encroaches on their property.[3] When Antonia Hammond confronted Glodzik about the fence, he told her, "Go ahead and call city hall, they're all my friends, they're all my buddies." App. 172. Antonia Hammond called 911. Although police did not respond, Vinsko came to the property, tried to calm Hammond down, and told her that Glodzik did not need a permit to erect the fence.[4] Vinsko subsequently sent the Hammonds a letter assuring them that Glodzik had "always complied with the City's Ordinances" and that Vinsko would "monitor this matter to be sure that remains the case." App. 286. To this end, Vinsko arranged to send an inspector to investigate allegations that Glodzik had destroyed property and done "work on the [Bakery Property] without a permit." App. 528-29. An inspector found that Glodzik lacked the required permits and assessed a fine.

The Hammonds filed a complaint against Glodzik, Leighton, Vinsko, and the City, seeking relief under § 1983 for alleged violations of their Fourth, Fifth, and Fourteenth Amendment rights.[5] The District Court granted summary judgment in favor of Defendants under § 1983, reasoning that Glodzik was not a state actor, Leighton and

---

[3] Because our analysis turns on whether Glodzik was a state actor and on whether Leighton or Vinsko was personally involved, whether and to what extent the fence encroaches is immaterial.

[4] Vinsko and Leighton testified that they did not know that Glodzik was going to destroy the Hammonds' property or erect a fence.

[5] The Hammonds also brought state common law and statutory claims that were dismissed. The Hammonds identified the orders dismissing these claims in their notice of appeal but did not discuss them in their brief and therefore have waived the appeal of these orders. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

Vinsko were not personally involved, and the City could not be held independently liable. The Hammonds appeal.[6]

## II

## A

We first address the Hammonds' § 1983 claims against Glodzik.[7]  Under § 1983, a plaintiff "must show that the defendants (1) were state actors who (2) violated his rights under the Constitution or federal law."  Benn v. Universal Health Sys., Inc., 371 F.3d 165, 169-70 (3d Cir. 2004).  The question of whether the Hammonds have met the first of these two requirements "is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the State?"  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (internal quotation marks and citation

---

[6] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This Court has appellate jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review of the District Court's grant of summary judgment, viewing facts and making reasonable inferences "in the light most favorable to the party opposing the motion." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014) (internal quotation marks omitted).  "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact."  Id.  Although we give the non-moving party the benefit of reasonable inferences, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment."  Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (internal quotation marks omitted).

[7] The Hammonds argue that Glodzik, who "never filed one opposing paper" before the District Court, has effectively admitted all material facts as stated by the Hammonds.  Appellant Br. 28-29; see App. 4 n.2.  The Federal Rules of Civil Procedure grant district courts broad latitude to "issue any . . . appropriate order" if a party has failed to address another party's assertion of fact at summary judgment.  Fed. R. Civ. P. 56(e)(4).  In light of the record, we conclude that the District Court acted appropriately by granting summary judgment in Glodzik's favor.

omitted).  In answering this question, "the facts are crucial," Crissman v. Dover Downs Entm't, Inc., 289 F.3d 231, 234 (3d Cir. 2002), and it is "only by sifting facts and weighing circumstances [that] the nonobvious involvement of the State in private conduct [can] be attributed its true significance," Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961).  The "central purpose" of this inquiry is "to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains."  Crissman, 289 F.3d at 239 (internal quotation marks omitted) (emphasis in original).  The Supreme Court has deemed private parties to be state actors in several different circumstances, including where: (1) the private party has acted with the help of or in concert with state officials, see Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 932-39 (1982); or (2) the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity, see Burton, 365 U.S. at 724-25.

The Hammonds contend Glodzik should be treated as a state actor because the City gave him access to the Bakery Property and because Leighton and Vinsko allowed Glodzik's actions.  The record, however, shows that Glodzik, as the equitable owner of the Bakery Property, was acting as a private individual in clearing it.  See Bauer v. Hill, 110 A. 346, 347 (Pa. 1920) ("Whenever an unconditional agreement has been made for the sale of land . . . , it may properly be referred to and treated as sold.").  Even if the City unlocked the Bakery Property to allow Glodzik access, it did so after Glodzik became the equitable owner of the property.  Thus, the City and Glodzik were acting independently

6

of each other as the seller and buyer of property. Glodzik's remark that he had "friends" in "city hall," App. 172, does not change the analysis. Inferring interdependence with the state from such bluster would be the type of "inference based upon a speculation or conjecture" that cannot defeat summary judgment. Halsey, 750 F.3d at 287.

As to inferences that can be drawn from Leighton's and Vinsko's conduct, the evidence does not show that Vinsko or Leighton knew Glodzik intended to destroy any property or erect a fence that would encroach on the Hammonds' property. Even assuming they had knowledge of and did not prevent these acts, that would be insufficient to create state action. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere approval or acquiescence of the State is not state action."). Moreover, the allegation that they failed to take action is undermined by the fact that the City fined Glodzik after concluding he did work on the Bakery Property without a permit. For these reasons, the Hammonds have not shown that Glodzik is a state actor and the District Court properly granted summary judgment in his favor.

B

The District Court also appropriately granted summary judgment in favor of Leighton and Vinsko. Municipal officials, such as Leighton and Vinsko, may be personally liable if they "participated in violating the [Hammonds'] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir.

7

2010) (internal quotation marks omitted).[8]  The evidence does not show that Leighton or Vinsko was involved in Glodzik's conduct.  With respect to the destruction of the Hammonds' personal property, no one testified that Leighton or Vinsko was present, and Antonia Hammond's recollection that someone at city hall assured her "that there were plans and proposals in place," App. 236-37, does not support the contention that Leighton or Vinsko personally caused or acquiesced in Glodzik's actions.  With respect to the construction of the fence, there is no evidence of Leighton's involvement.  As to Vinsko, the evidence shows only that he wanted Glodzik's actions to comply with the City's requirements, and the City fined Glodzik when he failed to do so.  These actions are the antithesis of acquiescing in wrongful conduct.  Thus, the District Court properly granted summary judgment in favor of Leighton and Vinsko.

C

The Hammonds' claim against the City also fails.  Because no City employee "inflicted . . . constitutional injury," the City cannot be liable.  City of L.A. v. Heller, 475 U.S. 796, 799 (1986).  Therefore, the District Court properly granted summary judgment in favor of the City.

III

For the foregoing reasons, we will affirm.

---

[8] As we noted in Santiago, courts "have expressed uncertainty as to the viability and scope of supervisory liability after [Ashcroft v. Iqbal, 556 U.S. 662 (2009)]."  629 F.3d at 30 n.8.  We need not address whether the scope of supervisory liability has narrowed, as Defendants are entitled to summary judgment "even under our existing supervisory liability test."  Id.